CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 3, 2026**

**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ASP UNIFRAX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-80008 (SWE) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 22, 23** |

# FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF ASP UNIFRAX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Alkegen. The location of Debtor ASP Unifrax Holdings, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is Mandalay Tower III, 201 East John Carpenter Freeway, Suite 900, Irving, Texas 75062.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having, in each case in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and N.D. Tex. L.B.R. (the "Local Rules"), and the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures" and, together with the Local Rules, the "Bankruptcy Local Rules"):

a. entered into that certain Restructuring Support Agreement, by and among the Debtors and the Consenting Stakeholders,[2] dated as of July 19, 2026 [Docket No. 23, Exhibit B] (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "Restructuring Support Agreement");

b. distributed, on or about July 20, 2026 (the "Solicitation Commencement Date"), (i) the *Disclosure Statement For the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, and including the Plan and all exhibits attached thereto, the "Disclosure Statement"), (ii) the Debtors' solicitation cover letter, attached as Exhibit 6 to the Scheduling Order[3] (the "Solicitation Cover Letter"), (iii) the ballots for voting on the Plan (the "Ballots" and the opt-out forms contained therein, the "Opt-Out Forms" and together with the Plan, the Disclosure Statement, and the Solicitation Cover Letter, a "Solicitation Package"), which forms of Ballots were attached as Exhibit 3A, Exhibit 3B, Exhibit 3C, Exhibit 4A, and Exhibit 4B to the Scheduling Order, to Holders of First Lien Secured Claims in Class 3 and Unsecured Funded Debt Claims in Class 4 (Classes 3 and 4 collectively, the "Voting Classes") to vote on the Plan, and (iv) the notice and subscription form for participation in the syndication of the DIP New Money Instruments and the Roll-Up DIP Instruments (the "Notice and Subscription Form");

[2] Capitalized terms used but not defined in this order (this "Confirmation Order") have the meanings ascribed to them in the *Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 22] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). The rules of interpretation set forth in Article I.B of the Plan shall apply.

[3] *Order (I) Scheduling a Combined Disclosure Statement and Plan Confirmation Hearing, (II) Approving the Solicitation Procedure, (III) Approving the Equity Rights Offering Documents, (IV) Approving the Deadlines and Notices Related Thereto, (V) Waiving Certain Requirements in Connection Therewith, and (VI) Granting Related Relief* [Docket No. 68] (the "Scheduling Order").

c. solicited, beginning on the Solicitation Commencement Date and continuing through August 17, 2026, at 4:00 p.m. (prevailing Central Time) (the "Voting Deadline"), votes on the Plan from Holders of Claims in the Voting Classes;

d. following the commencement of solicitation as described above, commenced, on July 26, 2026 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

e. posted, on or around July 20, 2026, the contents of the Solicitation Packages and, on or around July 26, 2026, the First Day Pleadings on the Solicitation Agent's public website;

f. Filed, on the Petition Date, among other things, (i) the Plan; (ii) the Disclosure Statement [Docket No. 23]; (iii) the *Declaration of Brian Whittman, Chief Executive Officer of Alkegen, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19], detailing the facts and circumstances of the Chapter 11 Cases; (iv) the First Day Pleadings; and (v) the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement and Plan Confirmation Hearing, (II) Approving the Solicitation Procedures, (III) Approving the Equity Rights Offering Procedures, (IV) Approving the Deadlines and Notices Related Thereto, (V) Waiving Certain Requirements in Connection Therewith, and (VI) Granting Related Relief* [Docket No. 21] (the "Scheduling Motion");

g. Filed, on July 28, 2026, a certificate of service [Docket No. 52] evidencing service of the First Day Pleadings (the "First Day Pleadings Affidavit");

h. distributed, on or about August 3, 2026, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Hearing Approving the Disclosure Statement, Confirming the Joint Prepackaged Chapter 11 Plan, and Related Matters; and (III) Objection Deadlines and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan*, substantially in the form attached as Exhibit 1 to the Scheduling Order (the "Combined Hearing Notice") and, as applicable, the *Notice of (I) Non-Voting Status of Certain Unimpaired Claims and Interests Presumed to Accept and (II) Opportunity for Holders of Such Claims and Interests To Opt In To the Third-Party Release* or *Notice of (I) Non-Voting Status of Certain Impaired Claims and Interests Deemed to Reject and (II) Opportunity for Holders of Such Claims and Interests To Opt In To the Third-Party Release* substantially in the forms attached to the Scheduling Order as Exhibit 5A and Exhibit 5B (each, a "Notice of Non-Voting Status and Opt-In Form" and the opt-in forms therein each a "Non-Voting Opt-In Form") to parties in interest and Holders of Claims and Interests consistent with the Scheduling Order;

i. published, on August 3, 2026 in *The New York Times* (national and international editions), the publication notice of commencement of these Chapter 11 Cases and the Combined Hearing, substantially in the form attached as Exhibit 2 to the

Scheduling Order (collectively, the "Publication Notice"), as evidenced by the proofs of publication thereof [Docket Nos. 145, 146] (the "Publication Affidavits");

j. distributed, on or about August 3, 2026, the *Notice of Opportunity for Holders of Claims in Class 3 and Class 4 That Voted to Reject, or Abstained from Voting On, the Plan to Opt Into the Third-Party Release* [Docket No. 21] (the "Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release" and the opt-in forms therein each a "Rejecting or Abstaining Opt-In Form" and such Rejecting or Abstaining Opt-In Forms, together with the Non-Voting Opt-In Forms, each an "Opt-In Form" and, collectively, the "Opt-In Forms");

k. Filed, on August 17, 2026, a certificate of service [Docket No. 171] evidencing service of the Notice and Subscription Forms (the "Notice and Subscription Forms Affidavit");

l. Filed, on August 21, 2026, the *Notice of Filing of Plan Supplement* [Docket No. 250] (the "Initial Plan Supplement");

m. Filed, on August 26, 2026, a certificate of service [Docket No. 259] evidencing service of the Combined Hearing Notice, each Notice of Non-Voting Status and Opt-In Form, the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release (the "Combined Hearing and Opt-In Notice Affidavit");

n. Filed, on August 27, 2026, a certificate of service [Docket No. 260] evidencing service of the Solicitation Packages (the "Solicitation Affidavit" and, together with the Publication Affidavits, the First Day Pleadings Affidavit, the Notice and Subscription Forms Affidavit, the Combined Hearing and Opt-In Notice Affidavit and all other affidavits of service and publication in these Chapter 11 Cases, the "Affidavits");

o. Filed, on September 1, 2026, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 272] (the "Voting Report"), evidencing that the Debtors obtained acceptance of the Plan by each Voting Class as of the Voting Deadline;

p. Filed, on September 1, 2026, (i) the *Declaration of Brian Whittman, Chief Executive Officer of Alkegen and Its Debtor Affiliates, in Support of (I) Approval of the Debtors' Disclosure Statement and (II) Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 271] (the "Whittman Declaration"), (ii) the *Declaration of Doug Donoghue in Support of (I) Approval of the Debtors' Disclosure Statement and (II) Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates*

[Docket No. 270] (the "Donoghue Declaration"), (iii) the *Declaration of Robert Beasley in Support of (I) the Approval of the Debtors' Disclosure Statement and (II) Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 269] (the "Beasley Declaration"), and (iv) the *Declaration of Todd Arden in Support of (I) the Approval of the Debtors' Disclosure Statement and (II) Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 268] (the "Arden Declaration" and together with the Voting Report, the Whittman Declaration, the Donoghue Declaration, and the Beasley Declaration, the "Declarations");

q. Filed substantially contemporaneously herewith the *Notice of Filing of First Amended Plan Supplement* (the "First Amended Plan Supplement" and together with the Initial Plan Supplement, as may be amended, supplemented, or otherwise modified from time to time, the "Plan Supplement");

r. Filed substantially contemporaneously herewith the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirmation of, the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* (the "Confirmation Brief"); and

s. operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Bankruptcy Court, having:

a. reviewed the procedures for voting on the Plan (the "Solicitation Procedures") and opting in to, or opting out of, as applicable, the Third-Party Release (the "Opt-In/Opt-Out Procedures");

b. entered, on July 28, 2026, the Scheduling Order, which, among other things, set (i) August 17, 2026, at 4:00 p.m. (prevailing Central Time) as the Voting Deadline and Accepting Voter Opt-Out Deadline, (ii) August 28, 2026 at 4:00 p.m. (prevailing Central Time) as (A) the deadline for objections to the adequacy of the Disclosure Statement and Confirmation of the Plan and (B) the Non-Voting Opt-In Deadline; (iii) September 3, 2026, at 10:30 a.m. (prevailing Central Time) as the date and time for the Combined Hearing; and (iv) September 21, 2026, at 4:00 p.m. (prevailing Central Time) as the Rejecting Voter Opt-In Deadline;

c. reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Whittman Declaration, the Donoghue Declaration, the Beasley Declaration, the Affidavits, the Combined Hearing Notice, the Solicitation Cover Letter, the Ballots, the Publication Notice, the Notices of Non-Voting Status and Opt-In Form, and all other Filed pleadings, exhibits, statements, declarations, and comments regarding approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights;

d. reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

e. considered the Restructuring Transactions incorporated and described in the Plan, including in the Plan Supplement and the Restructuring Transactions Memorandum;

f. held the Combined Hearing on September 3, 2026, at 10:30 a.m. (prevailing Central Time);

g. heard and considered the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto;

h. overruled any and all objections to Confirmation of the Plan and to approval of the Disclosure Statement, and any and all statements and reservations of rights related thereto not consensually resolved or withdrawn;

i. considered all oral representations, affidavits, testimony, documents, Filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan, including any objections thereto; and

j. taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents Filed in support of approval of the Disclosure Statement and Confirmation of the Plan and the arguments and evidence presented at the Combined Hearing establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A. Findings and Conclusions.**

1. The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B. Jurisdiction and Venue, Eligibility for Relief, Burden of Proof, and Notice.**

2. The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), which was referred to the Bankruptcy Court under 28 U.S.C. § 157, and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* from the United States District Court for the Northern District of Texas, dated August 3, 1984. The Bankruptcy Court has jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this district pursuant to sections 1408 and 1409 of the Judicial Code. Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code. Each of the Debtors was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

**C. Eligibility for Relief.**

3. The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D. Commencement and Joint Administration of these Chapter 11 Cases.**

4. On the Petition Date, the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 28, 2026, the Bankruptcy Court entered the *Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 53] pursuant to which the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**E. Objections Overruled.**

5. The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases. Any resolution or disposition of objections to approval of the Disclosure Statement or Confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved Cure disputes, if any, which shall be resolved in accordance with Article V of the Plan), if any, related to approval of the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**F. Burden of Proof – Confirmation of the Plan.**

6. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified on behalf of the Debtors in connection with Confirmation, including those who testified via the Declarations, was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**G. Approval of the Disclosure Statement.**

7. The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including, to the extent applicable, the Securities Act and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code), and is approved in all respects. The Filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b). The Debtors' use of the Disclosure Statement in solicitation of acceptances of the Plan is approved and the Disclosure Statement is approved on a final basis pursuant to this Confirmation Order.

**H. Solicitation and Voting; Notice.**

8. The Solicitation Procedures, including all documents related thereto (including, for the avoidance of doubt, the Solicitation Cover Letter, the Combined Hearing Notice, the Publication Notice, the Ballots, the Notices of Non-Voting Status and Opt-In Form, and the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release), and the procedures for the tabulation of Ballots and the Opt-In Forms satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable laws, rules, and regulations, and are approved in all respects. The Debtors provided due, adequate, and sufficient notice of the Voting Deadline, the Objection Deadline, the deadlines to opt out of, or opt into, as applicable, the Third-Party Release, and the Combined Hearing in compliance with

the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations. No other or further notice is or shall be required.

9. As described in the Voting Report and the Affidavits, the Debtors transmitted the Solicitation Package, the Combined Hearing Notice, the Notice of Non-Voting Status and Opt-In Form, and the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release, as applicable, to all Holders of Claims and Interests (except for Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests)) as of the Voting Record Date and all other parties in interest prior to or after the Petition Date. Specifically, as described in the Voting Report and Affidavits, (a) prior to commencing these Chapter 11 Cases, the Debtors transmitted (i) the Solicitation Package to all Holders of Claims in the Voting Classes and/or to the brokers, dealers, commercial banks, trust companies, or other nominees or agents and mailing agents banks pursuant to the security position reports by the DTC of the Voting Classes whose beneficial holders are entitled to vote on the Plan (such parties, collectively, the "Nominees") and (ii) the Notices of Non-Voting Status and Opt-In Form to Holders of Claims that are Unimpaired under the Plan and who are conclusively presumed to accept the Plan (Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims)) and Holders of Claims and Interests that are Impaired under the Plan and who are conclusively deemed to reject the Plan (Class 8 (Existing Alkegen Holdco Interests) and Class 9 (Section 510(b) Claims)), and (b) subsequent to the Voting Deadline, transmitted the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release to Holders of Claims that are entitled to vote on the Plan and either voted to reject the Plan or abstained from voting. Transmission and service of the foregoing, and any and all other documents associated with the Debtors' solicitation, complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable

nonbankruptcy law, rule, or regulation, and were timely, adequate, and sufficient, and no other or further notice is or shall be required.

10. Under the circumstances of these Chapter 11 Cases, the period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan. The negotiation, execution, and delivery of the Restructuring Support Agreement, the performance of all obligations thereunder, and the solicitation of votes to accept or reject the Plan was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable nonbankruptcy law, rule, or regulation. The Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys are hereby granted the protections provided under section 1125(e) of the Bankruptcy Code.

11. Holders of Claims in Class 3 (First Lien Secured Claims) and Class 4 (Unsecured Funded Debt Claims) were eligible to vote on the Plan in accordance with the Solicitation Procedures. The Ballots used to solicit votes to accept or reject the Plan from Holders in the Voting Classes were appropriate and adequately addressed the particular needs of these Chapter 11 Cases. As evidenced by the Voting Report, Class 3 and Class 4 each voted to accept the Plan at each Debtor entity in accordance with section 1126 of the Bankruptcy Code.

12. Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are Unimpaired and conclusively presumed to accept the Plan (collectively, the "Deemed Accepting Classes"). Holders of Claims and Interests, as applicable, in Class 8 (Existing Alkegen Holdco Interests) and Class 9 (Section 510(b) Claims), are Impaired and deemed to reject the Plan (collectively, the "Deemed Rejecting Classes").

Holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired or Impaired and are conclusively deemed to accept or reject the Plan, and, in either scenario, are not entitled to vote on the Plan (the foregoing Classes, collectively with the Deemed Accepting Classes and the Deemed Rejecting Classes, the "Non-Voting Classes"). The Debtors were not required to solicit votes from Holders of Claims or Interests, as applicable, in the Non-Voting Classes.

13. The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all applicable non-bankruptcy rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

**I. Opt-In/Opt-Out Procedures.**

14. The Opt-In/Opt-Out Procedures set forth in the Ballots and the Scheduling Motion, and the service of the Combined Hearing Notice, the Publication Notice, the Notices of Non-Voting Status and Opt-In Form, and the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release, as applicable, are good, sufficient, and adequate to bind the applicable parties to the Third-Party Release and are approved in all respects. The process described in the Scheduling Motion (as authorized by the Scheduling Order) and the Voting Report that the Debtors and the Solicitation Agent followed to identify the relevant parties on which to serve the applicable Ballot, Notice of Non-Voting Status and Opt-In Form, or Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release (a) is consistent with practices used in other complex chapter 11 cases, and (b) was reasonably calculated to ensure that each Holder of Claims and Interests in each Class was informed of its ability to opt out of, or opt into, as applicable, the Third-Party Release and the consequences for failure to do so timely. Any party, other than a party that voted to accept the Plan, that did not elect in its Opt-In Form to opt in to the Third-Party Release, in accordance with the Solicitation Procedures, shall be

neither a Released Party nor a Releasing Party under the Plan. Any party that voted to accept the Plan but elected in its Ballot, through the Opt-Out Form included therein, to opt out of the Third-Party Release, in accordance with the Solicitation Procedures, shall be neither a Released Party nor a Releasing Party under the Plan.

15. The procedures used for tabulation of elections to opt out of and opt into, as applicable, the Third-Party Release are approved in all respects.

**J. Plan Supplement.**

16. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good, proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable laws, rules, and regulations, and no other or further notice is or shall be required with respect to the Plan Supplement and all of the documents included therein.

17. All documents included in the Plan Supplement, including any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), are integral to, part of, and incorporated by reference in, the Plan and this Confirmation Order as if fully set forth therein and herein. Subject to the terms of the Plan, the Restructuring Support Agreement, and this Confirmation Order, the Debtors' right to alter, amend, update, or modify the Plan Supplement on or before the Effective Date is reserved. All parties were provided due, adequate, and sufficient notice of the Plan Supplement.

18. The terms and conditions of the Equity Backstop Commitment Agreement, including the Equity Backstop Premium, are fair, reasonable, and the best available to the Debtors under the circumstances. Such terms and conditions reflect the Debtors' exercise of sound business judgment consistent with their fiduciary duties, are based on good, sufficient, and sound

business purposes and justifications, and are supported by reasonably equivalent value and consideration.

**K. Modifications to Plan.**

19. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan after solicitation of the Plan, as reflected in this Confirmation Order (including any modifications announced on the record of the Combined Hearing), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan. After giving effect to these modifications, if any, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan. Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan. All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**L. Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

20. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code. In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the Entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**M. Proper Classification—Sections 1122 and 1123.**

21. The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes based on differences in the legal nature or priority of such Claims and Interests (other than the DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and which are not required to be designated as separate classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

**N. Specified Unimpaired Classes—Section 1123(a)(2).**

22. Article III of the Plan specifies that Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code. Claims in Class 6 (Intercompany Claims) and Interests in Class 7 (Intercompany Interests) are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to have rejected the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.

23. Additionally, Article II of the Plan specifies that Allowed Administrative Claims, DIP Claims, Priority Tax Claims, and Professional Fee Claims will be paid in full or otherwise Unimpaired in accordance with the terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**O. Specified Treatment of Impaired Classes—Section 1123(a)(3).**

24. Article III of the Plan specifies that Claims and Interests in Class 3 (First Lien Secured Claims), Class 4 (Unsecured Funded Debt Claims), Class 8 (Existing Alkegen Holdco Interests), and Class 9 (Section 510(b) Claims) are Impaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code (collectively, the "Impaired Classes"), and describes the treatment of such Impaired Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**P. No Discrimination—Section 1123(a)(4).**

25. Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has accepted a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**Q. Adequate Means for Plan Implementation—Section 1123(a)(5).**

26. The provisions of the Plan, including Article IV, together with the exhibits and attachments to the Plan (including the Plan Supplement) and the Disclosure Statement, provide in detail the adequate and proper means for the cancellation of documents evidencing existing Claims and Interests and implementation of the transactions provided for in the Plan, including, among other things: (a) general settlement of Claims and Interests, (b) the Restructuring Transactions; (c) the sources of consideration for Plan distributions, including the Exit Facility, the Equity Rights Offering, the New RCF (if applicable), the New Equity Interests, and the New Equity Warrants; (d) the adoption of the New Corporate Governance Documents; (e) the Restructuring Transactions Memorandum, (f) the preservation of Causes of Action, and (g) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the transactions contemplated by the Plan. In addition to these core transactions, the Plan sets forth the other critical mechanics of the Debtors' emergence, such as the vesting of Estate assets in the Reorganized Debtors, the assumption of Executory Contracts and Unexpired Leases, and the settlement of Claims and Interests. The precise terms governing the execution of certain of these transactions are set forth in the applicable Definitive Documents or forms of agreements included in the Plan Supplement. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**R. Voting Power of Equity Securities—Section 1123(a)(6).**

27. The New Corporate Governance Documents and Article IV.I of the Plan prohibit the issuance of non-voting equity Securities to the extent required to comply with section 1123(a)(6) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

**S. Directors and Officers—Section 1123(a)(7).**

28. The manner of selection of the officers, directors, or trustees (and any successor of any officer, director, or trustee) of the Reorganized Debtors set forth in the Plan is consistent with the interests of all Holders of Claims and Interests and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**T. Impairment/Unimpairment of Classes—Section 1123(b)(1).**

29. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan Impairs or leaves Unimpaired, as applicable, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**U. Assumption—Section 1123(b)(2).**

30. Article V.A of the Plan provides that, on the Effective Date, except as otherwise provided in Article V.H.1 of the Plan and elsewhere therein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date; *provided*, *however*, that neither the Restructuring Transactions nor the other transactions contemplated by the Plan will constitute a change of control or other acceleration event for purposes of any Executory Contract or Unexpired Lease of the Debtors. The Debtors provided sufficient notice to each non-Debtor counterparty to an Executory Contract or Unexpired Lease assumed or assumed and assigned by the Debtors during these

Chapter 11 Cases, as applicable. Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

**V. Discharge, Release, Injunction, Exculpation, and Related Provisions—Section 1123(b)(3).**

31. The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. Article VIII.C of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Article VIII.D of the Plan provides for the Third-Party Release, Article VIII.E of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Article VIII.F of the Plan provides for an injunction (the "Injunction").

32. As has been established based upon the evidence presented at the Combined Hearing (including the Declarations), the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction (a) are the product of extensive, arm's-length, good faith negotiations among the Debtors and their principal constituencies, including the Consenting Stakeholders, that resulted in agreement on the terms of the Plan and the execution of the Restructuring Support Agreement, (b) were an express condition of the Consenting Stakeholders for entry into the Restructuring Support Agreement and agreeing to the terms of the Plan; (c) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (d) are appropriately tailored under the facts and circumstances of these Chapter 11 Cases, (e) were integral to the agreements and settlements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (f) confer substantial benefits on the Estates, (g) are fair, equitable, and reasonable, and (h) are in the best interests of the Debtors, the Estates, and parties in interest. Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation, or Injunction would impair the Debtors' ability to confirm and implement the Plan.

a. *Debtor Release.*

33. The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release set forth in Article VIII.C of the Plan. The Debtor Release is a necessary and integral element of the Plan, a component of the comprehensive settlement to be implemented pursuant to the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Estates, Holders of Claims and Interests, and all of the Debtors' stakeholders. The Debtors' or the Reorganized Debtors' pursuit of any such claims and Causes of Action against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved significantly outweigh any potential benefit from pursuing such claims and Causes of Action. The Debtors do not believe that they have material Causes of Action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such causes of action as compared to the results and benefits achieved under the Plan. The Debtor Release, as set forth in Article VIII.C of the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Release.

34. The Debtor Release appropriately offers protection to parties who provided consideration to the Debtors and who participated in the Debtors' restructuring process, including the Consenting Stakeholders, whose participation in the Chapter 11 Cases was critical to the Debtors' successful implementation of the Restructuring Transactions and emergence.

Specifically, the Released Parties under the Plan made significant concessions and contributions to these Chapter 11 Cases, including, as applicable, (a) negotiating and actively supporting the Plan and the Chapter 11 Cases, (b) providing necessary liquidity for the Debtors during the Chapter 11 Cases, (c) settling and compromising substantial rights and Claims against the Debtors under the Plan, and (d) proposing, negotiating in good faith, and ultimately consummating the value-maximizing Restructuring Transactions contemplated by the Plan for the benefit of the Debtors, their Estates, and all parties in interest.

35. The Debtor Release for each Debtor is appropriate, supported by the collective participation of the Debtors in the Chapter 11 Cases, and is necessary for the Debtors to optimize their intercompany claim structure post-emergence. The Debtor Release for the Debtors' current and former directors, officers, and managers is appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and actively participated in meetings and negotiations during these Chapter 11 Cases. The Debtors' directors, officers, professionals, and other agents have been instrumental in negotiating, formulating, and implementing the restructuring transactions contemplated by the Plan. The Released Parties played an integral role in the formulation of the Plan, made significant contributions that are essential to the Plan's success, and expended significant time and resources analyzing and negotiating the Plan and the issues presented by the Debtors' prepetition capital structure.

36. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In addition, the Debtor Release expressly excludes the release of any Causes of Action identified on the Schedule of Retained Causes of Action. The

Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Estates and the critical nature of the Debtor Release to the Plan.

37. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (a) no Entity shall be a Released Party if such Entity is not a Releasing Party and (b) the definition of Related Parties in the Plan shall exclude Luyang and its wholly owned subsidiaries and Affiliates.

b. *Third-Party Release.*

38. The Third-Party Release, as set forth in Article VIII.D of the Plan, is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring process and implementing the Plan; (d) a good faith settlement and compromise of the claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

39. Like the Debtor Release, the Third-Party Release was critical to incentivizing parties to support the Plan, facilitated participation in the Restructuring Support Agreement and the chapter 11 process generally, and prevents significant, time-consuming, and value-destructive litigation. For months prior to the commencement of these Chapter 11 Cases, the Released Parties worked constructively with the Debtors to negotiate and implement a value-maximizing reorganization embodied in the Plan that enables the Reorganized Debtors to emerge from these Chapter 11 Cases with a right-sized capital structure and viable go-forward business plan. Such parties have provided material concessions, benefits, and commitments to the Debtors through the

Restructuring Support Agreement and during the pendency of the cases. In particular, certain of the Released Parties consented to the Debtors' use of Cash Collateral, backstopped and funded the DIP Facility, committed to backstop and fund the Equity Rights Offering, and committed to provide the Exit Facilities upon the Effective Date, all of which are necessary to fund the Chapter 11 Cases through emergence.

40. Further, without the Consenting Creditors agreeing to equitize their First Lien Secured Claims, Holders of General Unsecured Claims would not receive a full recovery in these Chapter 11 Cases. Without the Third-Party Release, the Debtors' key stakeholders would not have been willing to fund and otherwise support the Restructuring Transactions contemplated by the Plan, which will enable the Debtors to emerge from bankruptcy with a deleveraged balance sheet while paying or Reinstating Claims held by Holders of General Unsecured Claims. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process.

41. The Third-Party Release is consensual as to all relevant parties, including all Releasing Parties, because: (a) the Releasing Parties were provided adequate notice of the Chapter 11 Cases, the Plan, and the Opt-In/Opt-Out Procedures; (b) all Holders of Claims in the Voting Classes had the opportunity to opt out of, or opt into, as applicable, the Third-Party Release through their Ballots and Opt-In Forms, as applicable; (c) Holders of Claims against or Interests in the Debtors that were not entitled to vote to accept or reject the Plan had the opportunity to opt into the Third-Party Release through the applicable Notice of Non-Voting Status and Opt-In Form; and (d) the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Combined Hearing Notice, the Ballots, the Notices of

Non-Voting Status and Opt-In Form, and the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release.

42. The Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are the subject of the Third-Party Release, and no other disclosure is necessary. The Combined Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (national and international editions), the Ballots sent to all Holders of Claims entitled to vote on the Plan, the Notice of Non-Voting Status and Opt-In Form sent to all Holders of Claims and Interests either presumed to have accepted or deemed to have rejected the Plan, and the Notice of Opportunity for Rejecting or Abstaining Voters to Opt Into the Third-Party Release sent to all Holders of Claims entitled to vote on the Plan who either voted to reject the Plan or abstained from voting on the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release. The Releasing Parties were given due and adequate notice of the Third-Party Release, and thus the Third-Party Release is consensual under controlling precedent as to those Releasing Parties that, as applicable, opted into the Third-Party Release or did not elect to opt out of granting the Third-Party Release. In light of the foregoing, the Third-Party Release is approved in its entirety.

c. *Exculpation*.

43. The Exculpation provided by <u>Article VIII.E</u> of the Plan is appropriate under applicable law, and enforceable to the maximum extent allowed by *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022) and *In re Highland Capital Mgmt., L.P.*, 132 F. 4th 353 (5th Cir. 2025). The Exculpation is supported by proper evidence, proposed in good faith, formulated following extensive, good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated

Party and 1125(e) Exculpated Party has participated in these Chapter 11 Cases in good faith and in compliance with applicable Laws with regard to solicitation of votes and distribution of consideration pursuant to the Plan, and is appropriately released and exculpated as set forth in Article VIII.E of the Plan. The Exculpation, including its carveout for actual fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

d. *Injunction*.

44. The Injunction set forth in Article VIII.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose. Except as otherwise expressly provided in the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relate to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to the terms of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable. Notwithstanding anything to the contrary in the foregoing, the Injunction set forth in Article VIII.F of the Plan does not enjoin the enforcement of any post Effective Date obligations

of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the Exit Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

45. Upon entry of this Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, are deemed to have consented to the injunction provisions set forth in Article VIII.F of the Plan.

e. *Preservation of Causes of Action*.

46. The provisions regarding the preservation of Causes of Action in the Plan (including Article IV.Q), and the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

47. Article IV.Q of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The Plan provides that each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the Debtor Release and Exculpation contained in the Plan, including in Article VIII thereof, which shall be

deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date. Any retained Causes of Action shall remain with the Debtors and shall vest with the Reorganized Debtors as of the Effective Date.

48. The provisions regarding the preservation of Causes of Action in the Plan, including those contained in the Plan Supplement, are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors and their Estates. For the avoidance of doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtors.

f. *Release of Liens*.

49. The provisions providing for the release of Liens, as set forth in Article VIII.B of the Plan (and the exceptions to such release and discharge provided in the Exit Facility Documents, the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan), are appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

**W. Additional Plan Provisions—Section 1123(b)(6).**

50. The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**X. Cure of Defaults – Section 1123(d).**

51. Article V.C of the Plan provides for the satisfaction of Cures associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. On or as soon as reasonably practicable after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases pay all Cure costs (if any) relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan in the ordinary course of

business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed on or before fourteen (14) days after the Filing of the Schedule of Assumed Executory Contracts and Unexpired Leases, if any. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs; *provided*, *however*, that nothing in the Plan or this Confirmation Order shall prevent the Reorganized Debtors from paying any Cure costs despite the failure of the relevant counterparty to File such request for payment of such Cure costs. The Reorganized Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before the Combined Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Combined Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

52. If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment

of any Cure costs shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors and Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors shall have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

**Y. Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

53. The Debtors have complied with the applicable provisions of the Bankruptcy Code, and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

a. is eligible to be a debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b. has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Final Order of the Bankruptcy Court; and

c. has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy Law, rule, and regulation, the Scheduling Order, and all other applicable Law in transmitting the Solicitation Packages, related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Z. Plan Proposed in Good Faith—Section 1129(a)(3).**

54. The Debtors have proposed the Plan and the Restructuring Transactions (and all documents necessary to effectuate the Plan (including the Plan Supplement)) in good faith and not by any means forbidden by Law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the Filing of these Chapter 11 Cases, including the Declarations, the Plan, the Disclosure Statement, the Restructuring Support Agreement, the process leading to Confirmation, including the extensive, good faith, arm's-length negotiations among the Debtors and their stakeholders, the nearly unanimous support of each Class of Holders of Claims entitled to vote on the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from these Chapter 11 Cases with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

55. The Plan is the product of good faith, arm's-length negotiations by and among the Debtors and the Consenting Stakeholders, among others. The Plan itself and the process leading to its formulation provides independent evidence of the Debtors' and such other parties' good faith, serves the public interest, and assures fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**AA. Payment for Services or Costs and Expenses—Section 1129(a)(4).**

56. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**BB. Directors, Officers, and Insiders—Section 1129(a)(5).**

57. The Plan sets forth the structure of the New Board, and the identities of and/or the process for appointment of the New Board will be disclosed in the Plan Supplement to the extent known. The appointment to, or continuance in, the office of the applicable persons is consistent with the interests of Holders of Claims and Interests, and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**CC. No Rate Changes—Section 1129(a)(6).**

58. Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.

**DD. Best Interests of Creditors—Section 1129(a)(7).**

59. The Liquidation Analysis attached as Exhibit C to the Disclosure Statement, the Donoghue Declaration, and the other evidence related thereto in support of the Plan that was proffered at, prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on

the Effective Date, under chapter 7 of the Bankruptcy Code. As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**EE. Acceptance by Certain Classes—Section 1129(a)(8).**

60. Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes, each of which is entitled to vote on the Plan, are Impaired. As evidenced by the Voting Report, each of the Voting Classes has voted to accept the Plan. Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to have rejected the Plan (to the extent cancelled and released), and, in either event, are not entitled to vote to accept or reject the Plan. Pursuant to the Plan, Holders of Interests in Class 8 (Existing Alkegen Holdco Interests) and Holders of Claims in Class 9 (Section 510(b) Claims) are Impaired, receive no recovery on account of their Claims and Interests, and are deemed to have rejected the Plan. Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Class 8 and Class 9, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to such Classes as set forth herein and thus satisfies section 1129(b) of the Bankruptcy Code.

**FF. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

61. The treatment of Allowed Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**GG. Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

62. As evidenced by the Voting Report, Holders of Claims in Class 3 (First Lien Secured Claims) and Class 4 (Unsecured Funded Debt Claims) voted to accept the Plan by the requisite number and amount of Claims at each Debtor, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**HH. Feasibility—Section 1129(a)(11).**

63. The Financial Projections attached as Exhibit D to the Disclosure Statement, the Donoghue Declaration, and the other evidence supporting Confirmation proffered or adduced by the Debtors at, prior to, or in the Declarations Filed in connection with, the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**II. Payment of Statutory Fees—Section 1129(a)(12).**

64. Article II.E of the Plan provides for the payment of all fees due and payable by the Debtors pursuant to section 1930(a) of the Judicial Code on the Effective Date. After the Effective Date, all Statutory Fees (as defined herein) shall be paid to the U.S. Trustee when due and payable,

until the applicable Chapter 11 Cases of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**JJ. Continuation of Employee Benefits—Section 1129(a)(13).**

65. Except as otherwise specified in the Plan, Article V.H of the Plan provides that all Compensation and Benefits Programs shall be assumed by the Reorganized Debtors, except for: (a) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Existing Alkegen Holdco Interests in any of the Debtors, which shall not constitute or be deemed to constitute Executory Contracts, and which shall be deemed terminated on the Effective Date; (b) Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and (c) Compensation and Benefits Programs that, as of the entry of this Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract. From and after the Effective Date, all retiree benefits (as defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**KK. Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

66. Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors do not owe domestic support obligations, are not individuals, and are not nonprofit corporations.

**LL. "Cram Down" Requirements—Section 1129(b).**

67. Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to have rejected the Plan, the Plan is confirmable pursuant to section 1129(b)(1) of the Bankruptcy Code. ***First***, all of the requirements of section 1129(a) of the Bankruptcy Code, other than

section 1129(a)(8) of the Bankruptcy Code, have been met. ***Second***, the Plan does not unfairly discriminate with respect to the Impaired Classes that have not voted to accept the Plan. The Plan's treatment of the Deemed Rejecting Classes is proper because the Plan's classification scheme rests on a legally acceptable rationale. ***Third***, under the Plan, (a) no Holder of a Claim or Interest junior to each such Deemed Rejecting Class will receive any recovery under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Class is receiving more than 100 percent on account of its Claim or Interest. Accordingly, the Plan is fair and equitable with respect to the Impaired Classes that have not voted to accept the Plan. The Plan may therefore be confirmed even though not all Impaired Classes have voted to accept the Plan.

**MM. Only One Plan—Section 1129(c).**

68. The Plan (including any previous versions thereof) is the only chapter 11 plan Filed for each of the Debtors in each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**NN. Principal Purpose of the Plan—Section 1129(d).**

69. As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**OO. Not Small Business Cases—Section 1129(e).**

70. The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases.

**PP. Good Faith Solicitation—Section 1125(e).**

71. The Debtors, the Consenting Creditors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, attorneys, and other Related Parties, as applicable, have acted in "good faith"

within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their respective activities relating to the support of the Plan and Consummation, including among other things, the execution, delivery, and performance of and under the Restructuring Support Agreement, the issuance of the New Equity Interests and New Equity Warrants, including the shares issued pursuant to the Equity Rights Offering and Equity Backstop Premium, the extension of financing under the DIP Facility (including the solicitation of participation therein), and the Exit Facility, and the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**QQ. Satisfaction of Confirmation Requirements.**

72. Based on the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**RR. Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

73. Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**SS. Implementation.**

74. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, the Definitive Documents, and all other relevant and necessary or desirable documents, have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The documents and agreements are essential elements of the Plan, and entry into and

consummation of the transactions contemplated by each such document or agreement are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order, or approval of the Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

**TT. Disclosure of Facts.**

75. The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving action to be taken by or required of the Debtors.

**UU. Good Faith.**

76. The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if they proceed to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. The Released Parties have made a substantial contribution to the Debtors' reorganization.

**VV. Valuation.**

77. The evidence with respect to the valuation analysis of the Debtors set forth in Exhibit E of the Disclosure Statement and introduced at the Combined Hearing and in the Beasley Declaration provides the basis for, and support for, the distributions and recoveries to Holders of Claims and Interests, as applicable, under the Plan, is reasonable, persuasive, and credible, and uses reasonable and appropriate methodologies and assumptions. Given such valuation of the Debtors, pursuant to the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, the Plan's treatment of Claims and Interests is appropriate and reasonable as set forth herein.

**ORDER**

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

78. **Findings of Fact and Conclusions of Law**. The above-referenced findings of fact and conclusions of Law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of Law, it is deemed so, and vice versa.

79. **Approval of the Disclosure Statement**. The Disclosure Statement is **APPROVED** in all respects as containing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

80. **Confirmation of the Plan**. The Plan, a copy of which is attached hereto as **Exhibit A**, as may be further amended by this Confirmation Order, is approved in its entirety and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, including

the Plan Supplement (including any supplements, amendments, or modifications thereof in accordance with this Confirmation Order, the Plan, and the Restructuring Support Agreement) and the Definitive Documents, are incorporated by reference into and are an integral part of this Confirmation Order.

81. **Solicitation**. The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and was appropriate and satisfactory and is approved in all respects.

82. **Objections Overruled**. To the extent that any objections (including any reservations of rights, joinders, or statements contained therein) to final approval of the Disclosure Statement and/or Confirmation of the Plan have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Combined Hearing, all such objections (including any reservation of rights, joinders, or statements contained therein), except with respect to unresolved Cure disputes and objections to the assumption or rejection of Executory Contracts and Unexpired Leases, if any, are hereby overruled in their entirety and on the merits.

83. All objections to Confirmation not Filed and served prior to the Objection Deadline set forth in the Combined Hearing Notice (as may have been extended by the Debtors), if any, are deemed waived and shall not be considered by the Bankruptcy Court.

84. **Deemed Acceptance of Plan**. Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of solicitation constitute technical changes or changes with respect to particular Claims or Interests made pursuant to agreements with Holders of such Claims or Interests and do not materially and adversely affect the treatment of any Claims

or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change the previously cast acceptances or rejections of the Plan. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

85. The Confirmation Order contains modifications to the Plan that were made to address objections and/or informal comments received from parties in interest. Modifications to the Plan since the Solicitation Commencement Date are consistent with the provisions of the Bankruptcy Code. The disclosure of any Plan modification prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan modification. The Plan, as modified, shall constitute the Plan submitted for Confirmation.

86. **Effectiveness of All Actions**. All actions contemplated by, or necessary to, effectuate the Plan, including all actions in connection with the Plan Supplement, as the same may be modified from time to time prior to the Effective Date (including, without limitation, any restructuring transaction steps set forth in one or more documents contained in the Plan Supplement, including, but not limited to, the Restructuring Transactions Memorandum), are hereby authorized to be taken on, prior to, or after the Effective Date, as applicable, without further application to or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors, and with the effect that such actions had been taken by the unanimous action, consent, approval, and vote of each of such officers, directors, managers, members, or equity holders.

87. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, the New Corporate Governance Documents, the Exit Facility Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. To the fullest extent permitted by applicable law, the authorizations and approvals contemplated by Article IV.H of the Plan shall be effective notwithstanding any requirements under non-bankruptcy Law.

88. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, Securities, agreements, and any amendments or modifications thereto.

89. **Means for Implementation of the Plan**. The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety. The Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article IV. Upon the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article II and Article III of the Plan.

90. **Incorporation by Reference**. The terms and provisions of the Plan are incorporated by reference and are an integral part of this Confirmation Order. The terms of the

Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates and their creditors and equity holders, and their respective successors and assigns, non-Debtor Affiliates, any affected third parties, all Holders of Interests, all Holders of any Claims, whether known or unknown, including, but not limited to, all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective Affiliates, successors, and assigns.

91. **Exit Facility**. On and as of the Effective Date, the Reorganized Debtors are authorized to enter into the Exit Facility pursuant to the Exit Facility Documents and the Restructuring Transactions Memorandum. This Confirmation Order shall constitute (a) approval of the Exit Facility and the Exit Facility Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith) and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Exit Facility, including executing and delivering the Exit Facility Documents, in each case, without any further notice to or order of the Bankruptcy Court. On the Effective Date, the Exit Facility shall be issued and distributed as provided for in the Restructuring Transactions Memorandum (as applicable) pursuant to, and in accordance with, the Plan.

92. As of the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically attached, perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facility Documents; (c) shall not be enjoined or subject to discharge, impairment, release, recovery, turnover, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever; and (d) shall not constitute preferential transfers, fraudulent transfers, fraudulent conveyances, or voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law. As of the Effective Date, the Exit Facility Agent, for the benefit of the Exit Term Loan Lenders, shall have a valid, binding, perfected, non-avoidable, and enforceable Lien on and security interest in the collateral and with priority specified in the Exit Facility Documents, and valid, binding, non-avoidable, and enforceable guarantee from each guarantor specified in the Exit Facility Documents. To the extent provided in the Exit Facility Documents, the Exit Facility Agent or Holder(s) of Liens under the Exit Facility Documents are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law, and the priorities of such Liens

and security interests shall be as set forth in the Exit Facility Documents. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties. The authorizations, determinations, and related provisions set forth in the preceding paragraphs 90 and 91 shall apply with equal force and effect to the New RCF and the New RCF Documents to the extent that (a) the Debtors or Reorganized Debtors, as applicable, enter into the New RCF prior to emergence and (b) the New RCF Documents are different from the Exit Facility Documents.

93. **Cancellation of Existing Securities and Agreements**. The cancellation of notes, instruments, certificates, and other documents evidencing Claims or Interests (including Existing Alkegen Holdco Interests) described in Article IV.G of the Plan (subject to the limitations set forth therein) and the release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan, are necessary to implement the Plan and are hereby approved. Such provisions are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

94. Holders of mortgages, deeds of trust, Liens, pledges, or other security interests released pursuant to Article VIII.B of the Plan shall execute such documents and take any and all other steps as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder (and the applicable Agents of such Holder) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the applicable Reorganized Debtors and their successors and assigns.

95. **Surrender of Cancelled Instruments or Securities**. On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.G of the Plan shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors and any non-Debtor Affiliates, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties (other than the non-Debtor Affiliates) vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, preserving and allowing each Agent/Trustee to exercise its charging lien against distributions made to holders of the relevant debt instruments under the Plan with respect to any unpaid fees, expenses (including counsel), or indemnity claims, and to enforce its priority of payment and indemnification rights under the applicable debt documents. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

96. If the record Holder of any First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes is DTC or its nominee or another securities depository or custodian thereof, and such First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such Holder of the First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes shall be deemed to have surrendered such Holder's note, debenture, or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof. For the avoidance of doubt, the Debtors or Reorganized Debtors, as applicable, shall provide cancellation orders to each Trustee, directing each Trustee to cancel the notes issued pursuant to its indenture. Each Trustee is authorized to follow such cancellation orders and in no event shall any Trustee have any obligation or liability regarding the content of such cancellation orders.

97. **Indemnification**. All indemnification provisions currently in place consistent with applicable Law (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) as of the Petition Date for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall, to the fullest extent permitted by applicable Law, (a) be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date, (b) be assumed by the Reorganized Debtors, and (c) not be limited, reduced, or terminated

after the Effective Date; *provided* that the immediately preceding subclauses (a) through (c) shall not apply to any obligation of any Debtor to indemnify, hold harmless, or any obligation of similar import that is on account of conduct determined in a Final Order as constituting a criminal act, actual fraud, gross negligence, or willful misconduct; *provided, further*, that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date or constitute a finding or conclusion that any party that may seek indemnification is entitled to indemnification under the terms of such indemnification provisions or is intended to effectuate the survival of any indemnification obligations for any party other than the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors.

98. **Restructuring Transactions**. The Debtors or the Reorganized Debtors are authorized to enter into and take any actions, including the actions set forth in the Restructuring Transactions Memorandum, as may be necessary or appropriate to effect the Restructuring Transactions, which may include: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, formation, organization, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement, the Restructuring Support Agreement, and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree, which may include transfers free and clear of any liens or other interests under section 1123(a)(5)(D) of the Bankruptcy Code; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and the Restructuring Support Agreement, and having

other terms for which the applicable Entities may agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law; (d) the execution and delivery of the New Corporate Governance Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation, organizational, governance, or constitutive documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution of the New Equity Interests, as applicable and as set forth herein, including the issuance and distribution of the New Equity Warrants pursuant to the New Equity Warrant Documents; (e) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (f) the consummation of the Equity Rights Offering and the issuance and distribution of the Equity Rights Offering Equity in accordance with the Equity Rights Offering Documents; (g) the reservation of equity under the Management Incentive Plan to the participants in the Management Incentive Plan as determined by the New Board; and (h) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law in connection with the Plan.

99. As set forth in the Equity Rights Offering Procedures, on the Target ERO Closing Date (as defined in the Equity Rights Offering Procedures), all payment-in-kind interest on all DIP Roll-Up Claims (as defined in the DIP Orders) shall cease accretion, subject to reinstatement of

such claims for accrued but unpaid interest if the Equity Rights Offering does not close on or promptly following the Target ERO Closing Date.

100. **Vesting of Assets in the Reorganized Debtors**. Except as otherwise provided in this Confirmation Order, the Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated therein, or entered into in connection therewith or pursuant to, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, including Interests held by the Debtor in any non-Debtor Affiliates, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, no Reorganized Debtor (including any Reorganized Debtor ultimately being wound down and liquidated in connection with the Restructuring Transactions) shall be treated as being liable on any Claim that is discharged pursuant to the Plan.

101. **Assumption and Assignment of Contracts and Leases**. The Debtors have exercised sound business judgment in determining whether to reject or assume each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan, and as set forth in the Plan Supplement.

102. The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption of such Executory Contracts and Unexpired Leases)

shall be, and hereby are, approved in their entirety. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising at any time prior to the effective date of assumption.

103. To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the Non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

104. **Insurance Policies**. Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

105. **Approval of the Management Incentive Plan**. The Reorganized Debtors are authorized to adopt and implement the Management Incentive Plan in accordance with Article IV.P of the Plan.

106. **Provisions Governing Distributions**. The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan, subject to each Trustee's right to exercise its charging lien against distributions made to the holders of notes under its indenture. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with, and as set forth in, the Plan or this Confirmation Order, as applicable.

107. **New Corporate Governance Documents and the Issuance of New Equity Interests**. The terms of the New Corporate Governance Documents, in each case as may be amended, restated, amended and restated, supplemented, or modified on or before the Effective Date consistent with the Plan and the Restructuring Support Agreement, are approved in all respects. The obligations of the applicable Reorganized Debtors related thereto will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or the Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state, federal, or foreign Law. To the extent applicable, entry of this Confirmation Order shall be deemed approval of the New Corporate Governance Documents, to the extent not approved by the Bankruptcy Court previously.

108. Additionally, on or prior to the Effective Date, the Debtors or the Reorganized Debtors shall take steps to provide that the New Equity Interests are issued, transferred, or reserved in accordance with the terms of the Plan, the Plan Supplement, the New Corporate Governance Documents, and applicable Law (including applicable securities Laws). On the Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized

to enter into the New Corporate Governance Documents and all related documents to which such Reorganized Debtor is contemplated to be a party on the Effective Date. The New Corporate Governance Documents will be effective as of the Effective Date, and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Equity Interests will be bound thereby in all respects, whether or not signatory thereto.

109. In addition, on and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record, to the extent not inconsistent with any provisions of the Plan, such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Facility Documents entered into, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan. The issuance of the New Equity Interests, including the Equity Rights Offering Equity, Equity Backstop Premium, and New Equity Warrants by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests. All of the New Equity Interests (whether denominated as shares, units, or other equity interests) issued or authorized to be issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan and the New Corporate Governance Documents applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

110. Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the New Corporate Governance Documents will be governed by the jurisdictional provisions therein. The New Corporate Governance Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms.

111. **Equity Backstop Commitment Agreement**. The Debtors' entry into and performance under the Equity Backstop Commitment Agreement, and all transactions contemplated therein, including, without limitation, the payment of the Equity Backstop Premium, is approved in all respects. The Debtors' entry into the Equity Backstop Commitment Agreement, including the Debtors' agreement to incur and satisfy the Equity Backstop Premium, constitutes a reasonable exercise of the Debtors' business judgment. The Equity Backstop Premium is an actual and necessary cost of preserving the Debtors' estates and as such is approved and Allowed as an administrative expense pursuant to sections 503(b) and 507(a) of the Bankruptcy Code. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified to the extent necessary to enable each of the Backstop Parties to perform under the Equity Backstop Commitment Agreement and to exercise any and all of their contractual rights thereunder, without seeking further relief from the automatic stay, and neither the Debtors nor any other party in interest may enforce the automatic stay against the Backstop Parties or any Indemnified Person under the indemnification obligations under the Equity Backstop Commitment Agreement with respect to such rights.

112. **Notice of Subsequent Pleadings**. Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Reorganized Debtors and their

counsel; (b) the U.S. Trustee; (c) counsel to the Ad Hoc Group; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Reorganized Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Solicitation Agent shall not be required to file updated service lists.

113. **Release, Exculpation, Discharge, and Injunction Provisions**. Subject to the terms of this Confirmation Order, the release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety, including, but not limited to:

a. *Debtor Release*. The Debtor Release set forth in Article VIII.C of the Plan is hereby approved.

b. *Third-Party Release*. The Third-Party Release set forth in Article VIII.D of the Plan is hereby approved.

c. *Exculpation*. The Exculpation set forth in Article VIII.E of the Plan is hereby approved.

d. *Injunction*. The Injunction set forth in Article VIII.F of the Plan is hereby approved.

114. Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, constitutes the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing;

and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Estates asserting any claim or Cause of Action released by the Debtor Release against any of the Released Parties.

115. Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, constitutes the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

116. **Preservation of Causes of Action**. Except as otherwise provided in the Plan or this Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released by the Debtors pursuant to the Debtor Release and Exculpation contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors

as of the Effective Date. Any retained Causes of Action shall remain with the Debtors and shall vest with the Reorganized Debtors as of the Effective Date.

117. The provisions regarding the preservation of Causes of Action in Article IV.Q of the Plan are approved in their entirety, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors and their Estates.

118. **Release of Liens.** The release of Liens provided for in Article VIII.B of the Plan (and the exceptions to such release and discharge provided in the Exit Facility Documents, the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan) is hereby approved. The Holders of mortgages, deeds of trust, Liens, pledges, or other security interests subject to release pursuant to Article VIII.B shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such Lien Releases (as defined herein), and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

119. **Professional Escrow Account**. No later than the Effective Date, the Debtors shall establish and fund the Professional Escrow Account with Cash equal to the Professional Fee Amount. The Professional Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

120. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Escrow Account as soon as

reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Escrow Account, and to the extent that funds held in the Professional Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan. When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

121. Except as otherwise specifically provided in the Plan, from and after the entry of this Confirmation Order, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business for the period after the entry of this Confirmation Order without any further notice to or action, order, or approval of the Bankruptcy Court.

122. **Payment of Statutory Fees**. All fees under 28 U.S.C. § 1930 and any interest thereon under 31 U.S.C. § 3717 (together, "Statutory Fees"), to the extent applicable, due prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, all

Statutory Fees shall be paid to the U.S. Trustee. The Reorganized Debtors shall be jointly and severally liable for paying any and all Statutory Fees in full in Cash when due and payable in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR.

123. **Payment of Transaction Expenses.** The Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases), without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval. All Transaction Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Transaction Expenses. On or as soon as practicable after the Effective Date, final invoices for all Transaction Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors or Reorganized Debtors, as applicable. In addition, the Debtors and/or the Reorganized Debtors, as applicable, shall continue to pay, when due, pre- and post-Effective Date Transaction Expenses related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date, without any requirement for Bankruptcy Court review or approval.

124. **Payment of Agent/Trustee Fees and Expenses**. On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall pay in full in Cash all outstanding reasonable and documented fees, indemnity claims, costs, and expenses (including reasonable and documented fees and expenses of counsel) incurred by the Agents/Trustees under their governing indenture or other debt documents, whether such amounts were incurred before or after the Petition Date; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail from the applicable Agents/Trustees entitled to such fees, indemnity claims, costs, and expenses.

125. **Section 1146(a) Exemption**. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) contemplated herein and in the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

126. **Distributions Exempt from Securities Laws**. The offering of any New Equity Interests before the Petition Date and any New Equity Interests issuable on account of the Management Incentive Plan shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or in reliance on Regulation S under the Securities Act. The offering, issuance, and distribution of New Equity Interests (other than on account of the Management Incentive Plan) after the Petition Date, including the Equity Rights Offering Equity via the Equity Rights Offering, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code, and to the extent such exemption is not available, then such New Equity Interests will be offered, issued and distributed under the Plan pursuant to section 4(a)(2) of the Securities Act, Regulation D or Rule 701 promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration.

127. The shares of New Equity Interests to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof that are not, and have not been within 90 days of such transfer, an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities Laws and any rules and regulations of the United States Securities and Exchange Commission or state or local securities Laws, if any, applicable at the

time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Equity Interests in the New Corporate Governance Documents.

128. **Waiver of Section 341(a) Meeting and Certain Filings and Reporting**. The following are hereby permanently waived: (a) the requirement that the U.S. Trustee convene a meeting of creditors or equity holders pursuant to section 341(a) of the Bankruptcy Code; (b) the requirements that the Debtors file Schedules, SOFAs, and 2015.3 Reports (each as defined in the Scheduling Motion); and (c) any other requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or U.S. Trustee as to any such list, schedule, or statement not filed as of the entry of this Confirmation Order.

129. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan in accordance with its terms at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent in Article IX of the Plan. The Debtors or Reorganized Debtors, as applicable, including their officers, managers, and directors (including the members of the New Board, as applicable), are hereby immediately authorized, without further application to or order of the Bankruptcy Court, to enter into and effectuate the Restructuring Transactions and to take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Transactions to the extent consistent with the Plan (including the consent rights therein) and the Restructuring Support Agreement (subject to the applicable consent and consultation rights set forth therein). To the extent not approved by the Bankruptcy Court previously, entry of this Confirmation Order shall be deemed approval of the Restructuring Transactions (including each of the transactions and related agreements contemplated thereby),

and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith are hereby effective and authorized to be taken.

130. **Government Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan, the Restructuring Transactions, and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

131. **Directors and Officers of the Reorganized Debtors**. In accordance with Article IV.K of the Plan, on the Effective Date, the term of the current members of the board of directors of Alkegen Holdco shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board (to the extent known) shall be appointed in accordance with the New Corporate Governance Documents; *provided* that, pursuant to the Plan, the Disinterested Directors shall review and approve Professional Fee Claims filed after the Effective Date by Professionals acting at their direction in accordance with the applicable retention orders.

132. **Post-Confirmation Modifications**. Without the need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are

consistent with the Plan and Restructuring Support Agreement until the occurrence of the Effective Date.

133. **Applicable Nonbankruptcy Law**. To the fullest extent permitted by applicable law, the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy Law.

134. **Notice of Confirmation and the Effective Date**. As soon as reasonably practicable following entry of this Confirmation Order, the Reorganized Debtors shall serve on all parties in interest a notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice") in accordance with Bankruptcy Rules 2002 and 3020(c). As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date and shall serve a copy of the same on all parties in interest. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed the Combined Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of the Chapter 11 Cases and no other or further notice is necessary.

135. **Failure of Consummation**. If Consummation does not occur as to any Debtor, the Plan and the findings in this Confirmation Order shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by the Debtors, or any Holders of Claims against or Interests in the Debtors;

(b) prejudice in any manner the rights of the Debtors, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively; *provided* that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.

136. **Provisions Regarding United Steelworkers International Union**. For the avoidance of doubt, on the Effective Date, the Debtors shall be deemed to have assumed the collective bargaining agreements with the United Steelworkers International Union (the "USW Collective Bargaining Agreements"), and the Debtors or the Reorganized Debtors, as applicable, shall pay in the ordinary course all obligations arising under the USW Collective Bargaining Agreements, including but not limited to grievances, grievance and other settlements, and arbitration awards, to the extent such obligations are valid and payable and without respect to whether such obligations accrued or arose prior to the Effective Date; *provided* that, for the avoidance of doubt, the Debtors' and the Reorganized Debtors' rights, defenses, claims, and counterclaims with respect to any such obligations are expressly preserved. In light of the foregoing, USW shall not be obligated to file a proof of claim with respect to amounts due under any of the USW Collective Bargaining Agreements.

137. **Provisions Regarding Aetna Life Insurance Company**. The Master Services Agreement, MSA-0268591, effective as of January 1, 2026, and related schedules, exhibits, appendices and documents (the "Aetna MSA"), under which Aetna Life Insurance Company ("Aetna") provides claims administration and related services with respect to the Debtors' self-funded employee benefits plan (the "Benefits Plan"), is hereby assumed. Notwithstanding any other provision of the Plan or this Confirmation Order or any other order entered in these

Chapter 11 Cases, the Debtors and the Reorganized Debtors, as applicable, shall pay to Aetna in the ordinary course of business all amounts that become due to Aetna under the Aetna MSA, including, without limitation, all service fees and all Benefits Plan benefits paid by Aetna for which Aetna has not otherwise been reimbursed, without regard to the dates of service for such benefits, consistent with, and subject to, the terms of the Aetna MSA.

138. **Provisions Regarding Pension Benefit Guaranty Corporation**. For purposes of these paragraphs 138 through 141, the term (i) "ERISA" means the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301-1461, (ii) "PBGC" means the Pension Benefit Guaranty Corporation, a wholly owned United States government corporation, and an agency of the United States created under Title IV of ERISA, and (iii) "US Pension Plans" means the Interface Performance Materials, Inc. Pension Plan and the Unifrax Hourly Defined Benefit Pension Plan, both of which are single-employer defined benefit pension plans.

139. Upon the Effective Date, the Reorganized Debtors shall assume and continue the US Pension Plans.

140. Upon the Effective Date, the Reorganized Debtors shall (i) satisfy the minimum funding requirements for the US Pension Plans under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083; (ii) pay all required premiums for the US Pension Plans, if any, owed to PBGC under 29 U.S.C. §§ 1306 and 1307; and (iii) administer the US Pension Plans in accordance with the applicable provisions of ERISA and the Internal Revenue Code.

141. Notwithstanding any provision to the contrary, no provision in the Disclosure Statement, the Plan, the Confirmation Order, the Bankruptcy Code (including section 1141 thereof), or any other document filed in the Debtors' bankruptcy cases shall be construed as discharging, releasing, exculpating or relieving any individual from any fiduciary duties or

liabilities under Title I of ERISA ("Title I Liabilities") with respect to the US Pension Plans. PBGC and the US Pension Plans shall not be enjoined or precluded from enforcing such Title I Liabilities as a result of any of the provisions of the Plan, the Confirmation Order, the Bankruptcy Code, or any other document filed in the Debtors' bankruptcy cases.

142. **Provisions Regarding Governmental Units.** Nothing in the Plan or this Confirmation Order shall effect a release of any claim or Cause of Action by any Governmental Unit or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, environmental Laws, or any criminal Laws of the United States or any state or local authority against any of the Reorganized Debtors as reorganized pursuant to this Plan or any other party or Person, nor shall anything in the Plan or this Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against the Reorganized Debtors as reorganized pursuant to this Plan or any other party or Person for any liability of such Person whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code, environmental Laws, or any criminal Laws of the United States or any state or local authority against such persons, nor shall anything in the Plan or this Confirmation Order exculpate any party or Person, including the Reorganized Debtors as reorganized pursuant to this Plan, from any liability to any Governmental Unit or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person. For the avoidance of doubt, the Debtors' and the Reorganized Debtors' rights, defenses, claims, and counterclaims with respect to any foregoing claim, suit, action, or liability are expressly preserved. Nothing in the Plan or this Confirmation Order shall authorize the transfer or assignment of any governmental (a) license, (b) permit,

(c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; *provided*, *however*, that the Debtors, the Reorganized Debtors, and their respective successors reserve the right to assert any rights or defenses they may have under the Bankruptcy Code and applicable non-bankruptcy law; *provided*, *further*, that nothing in this paragraph 142 shall limit, prejudice, or impair the Debtors' or the Reorganized Debtors' (or any successors) right (including pursuant to the Plan) (i) to assume or assume and assign any Executory Contract pursuant to section 365 of the Bankruptcy Code as set forth in the Plan or the Plan Supplement, (ii) transfer any assets, or merge, dissolve, reincorporate, or (iii) convert the corporate form of any entity, in each case as set forth in the Plan, Plan Supplement, the Restructuring Transactions Memorandum, or this Confirmation Order, and in the case of (i)-(iii) each must be done in compliance with the Bankruptcy Code and applicable non-bankruptcy Law.

143. **Provisions Regarding Texas Taxing Authorities.** Notwithstanding any other provision in the Plan or the Confirmation Order, Dallas County, Irving Independent School District, Harris County, and Dallas County Utility and Reclamation District (collectively, the "Texas Taxing Authorities") shall retain their statutory ad valorem property tax liens until such time as the taxes secured by such liens are paid in full. The applicable Reorganized Debtor shall pay any 2026 ad valorem property taxes owed to the Texas Taxing Authorities as required under applicable non-bankruptcy law. In the event any 2026 ad valorem property taxes remain due as of that date, such unpaid taxes shall accrue penalties and interest pursuant to applicable non-bankruptcy law. To the extent such taxes have not yet been satisfied, the delinquent 2021-2025 ad valorem property taxes, plus accrued penalties and interest, owed by Stellar Materials, LLC to Harris County on Account Number 2236657100000 shall be paid, in full, on or

before the Effective Date. All rights and defenses of the Debtors and the Reorganized Debtors under non-bankruptcy law and the Bankruptcy Code are fully reserved and preserved with respect to any taxes sought by the Texas Taxing Authorities.

144. **Provisions Regarding Certain Allowed Claim Amounts.** The Debtors and each Trustee shall work in good faith to reconcile the Allowed amount of the First Lien Notes Claims, Second Lien Notes Claims, Third Lien Notes Claims, and Unsecured Notes Claims, respectively, before the Effective Date for purposes of calculating and making Plan Distributions to Holders of Claims in Classes 3 and 4 of the Plan. If the Debtors and any Trustee cannot agree on the Allowed amount of any such Claims in Classes 3 or 4 of the Plan, the Bankruptcy Court shall determine the dispute, and the Debtors and each Trustee agree that any such dispute may be raised to the Bankruptcy Court on an expedited basis. All rights, claims, defenses, and objections of the Debtors, each Trustee, and the beneficial Holders of First Lien Notes Claims, Second Lien Notes Claims, Third Lien Notes Claims, and Unsecured Notes Claims, respectively, with respect to the Allowed amount of such Claims are expressly reserved.

145. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101(2) of the Bankruptcy Code.

146. **Immediate Binding Effect.** Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and

injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

147. **Headings**. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

148. **References to and Omissions of Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

149. **Effect of Conflict**. This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

150. **Reporting**. After entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases.

151. **Final Order**. This Confirmation Order is a final order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

152. **Retention of Jurisdiction**. The Bankruptcy Court may properly, and upon the Effective Date, to the extent set forth in the Plan and otherwise consistent with applicable law and subject to the terms of applicable Plan Supplement documents, shall, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including (to the extent consistent with applicable law) the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

# # # END OF ORDER # # #

Submitted By:

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
1845 Woodall Rodgers Fwy
Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
lwebb@grayreed.com
acarson@grayreed.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
Margaret Reiney (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: steven.serajeddini@kirkland.com
nicholas.adzima@kirkland.com
margaret.reiney@kirkland.com

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: anup.sathy@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# **Exhibit A**

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ASP UNIFRAX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-80008 (SWE) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**JOINT PREPACKAGED CHAPTER 11 PLAN**
**OF REORGANIZATION OF ASP UNIFRAX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE COMMENCEMENT OF THE CHAPTER 11 CASES.**

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24110350)
1845 Woodall Rodgers Fwy
Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
lwebb@grayreed.com
acarson@grayreed.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
Nicholas M. Adzima (*pro hac vice* pending)
Margaret Reiney (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: steven.serajeddini@kirkland.com
nicholas.adzima@kirkland.com
margaret.reiney@kirkland.com

-and-

Anup Sathy, P.C. (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: anup.sathy@kirkland.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Alkegen. The location of Debtor ASP Unifrax Holdings, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is Mandalay Tower III, 201 East John Carpenter Freeway, Suite 900, Irving, Texas 75062.

**TABLE OF CONTENTS**


ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ..... 1
A. Defined Terms. ..... 1
B. Rules of Interpretation. ..... 16
C. Computation of Time. ..... 17
D. Governing Law. ..... 17
E. Reference to Monetary Figures. ..... 17
F. Reference to the Debtors or the Reorganized Debtors. ..... 17
G. Controlling Document. ..... 17
H. Consultation, Information, Notice, and Consent Rights. ..... 17

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ..... 18
A. Administrative Claims. ..... 18
B. DIP Claims. ..... 18
C. Priority Tax Claims. ..... 19
D. Professional Fee Claims. ..... 19
E. Payment of Statutory Fees. ..... 20
F. Transaction Expenses. ..... 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 21
A. Classification of Claims and Interests. ..... 21
B. Treatment of Claims and Interests. ..... 21
C. Special Provision Governing Unimpaired Claims. ..... 24
D. Elimination of Vacant Classes. ..... 25
E. Deemed Acceptance If No Votes Cast. ..... 25
F. Intercompany Interests. ..... 25
G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ..... 25
H. Controversy Concerning Impairment. ..... 25
I. Subordinated Claims and Interests. ..... 25
J. No Substantive Consolidation. ..... 25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ..... 26
A. General Settlement of Claims and Interests. ..... 26
B. Restructuring Transactions. ..... 26
C. Reorganized Debtors. ..... 27
D. Sources of Consideration for Plan Distributions. ..... 27
E. Corporate Existence. ..... 30
F. Vesting of Assets in the Reorganized Debtors. ..... 30
G. Cancelation of Existing Securities and Agreements. ..... 31
H. Corporate Action. ..... 31
I. New Corporate Governance Documents. ..... 32
J. Indemnification Obligations. ..... 32
K. Directors and Officers of the Reorganized Debtors. ..... 33
L. Effectuating Documents; Further Transactions. ..... 33
M. Certain Securities Law Matters. ..... 33
N. Section 1146 Exemption. ..... 34
O. Director and Officer Liability Insurance. ..... 35
P. Management Incentive Plan. ..... 35
Q. Preservation of Causes of Action. ..... 35

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 36
A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ..... 36
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 37
C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..... 37

D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. .......... 38
E. Insurance Policies. .......... 38
F. Reservation of Rights. .......... 39
G. Nonoccurrence of Effective Date. .......... 39
H. Employee Compensation and Benefits. .......... 39
I. Contracts and Leases Entered Into After the Petition Date. .......... 40

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .......... 40
A. Distributions on Account of Claims Allowed as of the Effective Date. .......... 40
B. Disbursing Agent. .......... 40
C. Rights and Powers of Disbursing Agent. .......... 41
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. .......... 41
E. Manner of Payment. .......... 43
F. Indefeasible Distributions. .......... 43
G. Compliance with Tax Requirements. .......... 43
H. Allocations. .......... 43
I. No Postpetition Interest on Claims. .......... 44
J. Foreign Currency Exchange Rate. .......... 44
K. Setoffs and Recoupment. .......... 44
L. Claims Paid or Payable by Third Parties. .......... 44
M. Distributions on Account of First Lien Notes Claims that Are First Lien Secured Claims and Unsecured Funded Debt Claims. .......... 45

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .......... 45
A. Disputed Claims Process. .......... 45
B. Allowance of Claims. .......... 46
C. Claims Administration Responsibilities. .......... 46
D. Estimation of Claims. .......... 46
E. Adjustment to Claims without Objection. .......... 46
F. Disallowance of Claims. .......... 47
G. No Distributions Pending Allowance. .......... 47
H. Distributions After Allowance. .......... 47
I. Single Satisfaction of Claims. .......... 47

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .......... 47
A. Discharge of Claims and Termination of Interests. .......... 47
B. **Release of Liens.** .......... 48
C. **Releases by the Debtors.** .......... 48
D. **Releases by the Releasing Parties.** .......... 50
E. **Exculpation.** .......... 51
F. **Injunction**. .......... 52
G. Protections Against Discriminatory Treatment. .......... 53
H. Document Retention. .......... 53
I. Reimbursement or Contribution. .......... 53

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN .......... 53
A. Conditions Precedent to the Effective Date. .......... 53
B. Waiver of Conditions. .......... 54
C. Effect of Failure of Conditions. .......... 54
D. Substantial Consummation .......... 54

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN .......... 55
A. Modification and Amendments. .......... 55
B. Effect of Confirmation on Modifications. .......... 55
C. Revocation or Withdrawal of Plan. .......... 55

ARTICLE XI. RETENTION OF JURISDICTION ........ 55

ARTICLE XII. MISCELLANEOUS PROVISIONS ........ 57
A. Immediate Binding Effect. ........ 57
B. Additional Documents. ........ 57
C. Statutory Committee and Cessation of Fee and Expense Payment. ........ 58
D. Reservation of Rights. ........ 58
E. Successors and Assigns. ........ 58
F. Notices. ........ 58
G. Enforcement of Confirmation Order. ........ 59
H. Term of Injunctions or Stays. ........ 59
I. Entire Agreement. ........ 60
J. Plan Supplement. ........ 60
K. Nonseverability of Plan Provisions. ........ 60
L. Votes Solicited in Good Faith. ........ 60
M. Closing of Chapter 11 Cases. ........ 60
N. Waiver or Estoppel ........ 60
O. Creditor Default. ........ 61
P. No Group. ........ 61

## INTRODUCTION

ASP Unifrax Holdings, Inc., also known as Alkegen, and the above-captioned debtors and debtors in possession (collectively, the "Debtors") propose this joint prepackaged chapter 11 plan of reorganization (as amended, supplemented, or otherwise modified from time to time, this "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors. Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates.* Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, valuation, projections, risk factors, a summary and analysis of this Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "*1125(e) Exculpated Parties*" means, collectively, and in each case in its capacity as such, (a) the Exculpated Parties, (b) current officers and directors of the Debtors, and (c) with respect to the foregoing Persons, the Related Parties thereof to the extent permitted under section 1125(e) of the Bankruptcy Code.

2. "*1L Pari Passu Intercreditor Agreement*" means that certain First Lien Pari Passu Intercreditor Agreement, dated as of September 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time), by and among JPMorgan Chase Bank, N.A., as the initial first lien credit agreement representative, Wilmington Trust, National Association, as the initial other representative, Wilmington Savings Fund Society, FSB, as initial first lien collateral agent, and each additional representative and collateral agent from time to time party thereto, and acknowledged and agreed to by ASP Unifrax Holdings, Inc., as the Company, and the other Grantors from time to time party thereto.

3. "*1L/2L/3L Intercreditor Agreement*" means that certain First Lien/Second Lien/Third Lien Intercreditor Agreement, dated as of September 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., the other Grantors party thereto, Wilmington Savings Fund Society FSB, as the initial senior priority representative, JPMorgan Chase Bank, N.A., as the initial first lien credit agreement administrative agent, Wilmington Trust, National Association, as the initial first lien indenture trustee, initial second priority representative, and initial third priority representative, and each additional representative from time to time party thereto.

4. "*Accepting Voter Opt-Out Deadline*" means the date by which Holders of Claims that vote to Accept this Plan may elect to opt out of the releases contained in this Plan, which shall be 4:00 P.M. (Prevailing Central Time) on August 17, 2026.

5. "*Ad Hoc Group*" means that certain ad hoc group of Holders of First Lien Term Loan Claims, First Lien Notes Claims, and Second Lien Notes Claims represented by the Ad Hoc Group Advisors.

6. "*Ad Hoc Group Advisors*" means, collectively, Davis Polk & Wardwell LLP as legal counsel, PJT Partners LP as investment banker, Haynes and Boone, LLP as local counsel in the Northern District of Texas, and all other professionals as may be retained by or on behalf of the Ad Hoc Group.

7. "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) the Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; (d) the Equity Backstop Premium; (e) the Transaction Expenses, but excluding DIP Claims; and (f) the Disinterested Director Fee Claims.

8. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which (a) for Professional Fee Claims shall be forty-five (45) days after the Effective Date and (b) for Administrative Claims other than Professional Fee Claims shall be thirty (30) days after the Effective Date.

9. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

10. "*Agent*" means any administrative agent, collateral agent, or similar Entity under the First Lien Credit Agreement, the DIP Credit Agreement, and the Exit Facility Credit Agreement, including any successors thereto, solely in their capacity as such.

11. "*Agent/Trustee*" means the Agent and Trustee.

12. "*Alkegen Holdco*" means Ulysses Investment Holdco, Inc., a corporation incorporated under the Laws of Delaware.

13. "*Allowed*" means, with respect to a Claim or Interest, any Claim or Interest (or portion thereof) against any Debtor that: (a) is deemed allowed under the Bankruptcy Code; (b) is allowed, compromised, settled, or otherwise resolved pursuant to the terms of this Plan (including the authority granted to the Reorganized Debtors to Allow Claims), in any stipulation that is approved by a Final Order of the Bankruptcy Court, or pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (c) has been allowed by a Final Order of the Bankruptcy Court, including the DIP Order. For the avoidance of doubt, any Claim or Interest (or portion thereof), that has been disallowed pursuant to a Final Order or any request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be an "Allowed" Claim. Except as otherwise specified in this Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date.

14. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer Law and other Law.

15. "*Backstop Parties*" means the "Backstop Parties" as set forth on Schedule 1 to the Restructuring Support Agreement.

16. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

17. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas.

18. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

19. "*Blue-Sky Laws*" means any local or state securities Law of any securities regulatory authority of any locality or any state.

20. "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" as used in Bankruptcy Rule 9006(a), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

21. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in the applicable currency.

22. "*Causes of Action*" means any and all claims, interests, controversies, actions, proceedings, reimbursement claims, contribution claims, recoupment rights, debts, third-party claims, indemnity claims, damages, remedies, causes of action, demands, rights, suits, obligations, liabilities, accounts, judgments, defenses, offsets, powers, privileges, licenses, Liens, guarantees, franchises, Avoidance Actions, counterclaims, and cross-claims, of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, whether arising before, on, or after the Petition Date, in contract, tort, Law, equity, or otherwise pursuant to any theory of Law. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

23. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code.

25. "*Claims Register*" means the official register of Claims maintained by the Solicitation Agent or the clerk of the Bankruptcy Court.

26. "*Class*" means a class of Claims or Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

27. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

28. "*Combined Hearing*" means the hearing before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

29. "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, healthcare plans, disability plans, severance benefit plans, bonus plans, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

30. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

31. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

32. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

33. "*Consenting Creditors*" means the "Consenting Creditors" as defined in the Restructuring Support Agreement.

34. "*Consenting Stakeholders*" has the meaning set forth in the Restructuring Support Agreement.

35. "*Consummation*" means the occurrence of the Effective Date.

36. "*Cure*" means all amounts, including an amount of $0, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

37. "*D&O Liability Insurance Policies*" means all unexpired insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers' and/or employees' liability and all agreements, documents, or instruments relating thereto.

38. "*Debtor Release*" means the releases given on behalf of the Debtors and their Estates as set forth in Article VIII.C of this Plan.

39. "*Debtors*" has the meaning set forth in the preamble.

40. "*Definitive Documents*" means, collectively and as applicable, all agreements, instruments, material pleadings, orders, forms, and other documents (including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto) governing the Restructuring Transactions, including (but not limited to) the following: (a) this Plan; (b) the Disclosure Statement; (c) the Solicitation Materials; (d) the Plan Supplement; (e) the DIP Documents; (f) the Exit Facility Documents; (g) the Restructuring Transactions Memorandum; (h) the Confirmation Order; (i) the New Corporate Governance Documents; (j) the Equity Rights Offering Documents; (k) the New Equity Warrant Documents.

41. "*DIP Agent*" means the administrative agent pursuant to the DIP Credit Agreement.

42. "*DIP Backstop Commitment*" means the commitment by the Backstop Parties to backstop the commitments to fund 100% of the DIP New Money Instruments by funding any DIP New Money Instruments not subscribed to by other First Lien Creditors pursuant to the Restructuring Support Agreement.

43. "*DIP Backstop Premium*" means cash in an amount equal to 5.0% of the New Funding Principal Amount, to be paid to the Backstop Parties as consideration for providing the DIP Backstop Commitment in accordance with the Restructuring Support Agreement and the DIP Documents.

44. "*DIP Claims*" means any Claims arising under, derived from, based on, or related to the DIP Facility or the DIP Obligations (as defined in the DIP Orders), including the Roll-Up DIP Claims.

45. "*DIP Credit Agreement*" means that certain Superpriority Senior Secured Debtor-in-Possession Term Loan Credit and Note Purchase Agreement (as may be amended, supplemented, or otherwise modified from time to time) by and among the Debtors and the DIP Parties.

46. "*DIP Documents*" means, collectively, the DIP Orders, the DIP Motion, the DIP Credit Agreement, the Loan Documents (as defined in the DIP Credit Agreement), the DIP Funding Documentation, and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, budgets, and other security documents, as amended, supplemented, or otherwise modified from time to time.

47. "*DIP Facility*" means the superpriority senior secured debtor-in-possession term loan credit and note facility in an aggregate principal amount of $630,000,000, with material terms and conditions of the DIP Facility to be set forth in the DIP Credit Agreement and the aforementioned description qualified in its entirety by reference to the DIP Credit Agreement and other DIP Documents.

48. "*DIP Funding Documentation*" means, collectively, the administrative materials necessary for the participation in and syndication and funding of the DIP Facility.

49. "*DIP Instruments*" means, collectively, the DIP New Money Instruments and the Roll-Up DIP Instruments.

50. "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

51. "*DIP Motion*" means the motion seeking approval of the DIP Facility.

52. "*DIP New Money Instruments*" means the new money term loans or notes issued under the DIP Facility in an aggregate principal amount equal to the New Funding Principal Amount.

53. "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

54. "*DIP Participation Deadline*" has the meaning set forth in the Restructuring Support Agreement.

55. "*DIP Parties*" means the DIP Lenders and the Backstop Parties.

56. "*Disbursing Agent*" means, as applicable, the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to this Plan.

57. "*Disclosure Statement*" means the disclosure statement for this Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, rule 3018 of the Bankruptcy Rules, and any other applicable Law, as may be amended, supplemented, or otherwise modified from time to time, to be approved by the Confirmation Order.

58. "*Disinterested Directors*" means Todd Arden and David Ford, in their capacity as disinterested directors of the boards of directors of Debtors ASP Unifrax Holdings, Inc. and Ulysses Parent, Inc.

59. "*Disinterested Director Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to the Disinterested Directors pursuant to their respective director agreements with the applicable Debtor entity. On the Effective Date, the Disinterested Director Fee Claims shall be deemed Allowed Administrative Claims against the Debtors.

60. "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof): (a) that is not Allowed; (b) that is not disallowed by this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party-in-interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

61. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under this Plan.

62. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under this Plan (excluding distributions made to or on account of any of the Debtors' publicly traded securities, the distributions to which will be governed by the customary practices and procedures of DTC), which date shall be the Confirmation Date, or such other date to be determined by the Debtors with the consent of the Required Consenting First Lien Creditors.

63. "*DTC*" means the Depository Trust Company.

64. "*Effective Date*" means the date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of this Plan and (b) this Plan is declared effective by the Debtors. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

65. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

66. "*Equity Backstop Commitment*" means the commitment by the Backstop Parties pursuant to the Equity Backstop Commitment Agreement, severally and not jointly, to purchase the remaining Equity Rights Offering Equity to the extent that the Equity Rights Offering is not fully subscribed.

67. "*Equity Backstop Commitment Agreement*" means that certain Equity Backstop Commitment Agreement between the Debtors and the Backstop Parties, as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, pursuant to which the Backstop Parties shall have agreed to provide the Equity Backstop Commitment in exchange for receiving the Equity Backstop Premium.

68. "*Equity Backstop Premium*" means 3.0% of the New Equity Interests, subject to dilution solely by the Management Incentive Plan and the New Equity Warrants, to be issued to the Backstop Parties in accordance with the Equity Rights Offering Documents as consideration for the Equity Backstop Commitment.

69. "*Equity Rights Offering*" means the rights offering of the Equity Rights Offering Equity to be consummated by New Alkegen on the Effective Date in accordance with this Plan and the Equity Rights Offering Documents.

70. "*Equity Rights Offering Amount*" means the amount of Allowed Roll-Up DIP Claims as of the Effective Date up to $335,000,000.

71. "*Equity Rights Offering Documents*" means, collectively, the Equity Backstop Commitment Agreement, the Equity Rights Offering Procedures, and any and all other agreements, documents, and instruments delivered or entered into in connection with, or otherwise governing, the Equity Rights Offering, including subscription forms and any other materials distributed in connection with the Equity Rights Offering.

72. "*Equity Rights Offering Equity*" means 59.0% of New Equity Interests calculated on a fully diluted basis, subject to dilution only by the Management Incentive Plan and the New Equity Warrants, issued pursuant to the Equity Rights Offering.

73. "*Equity Rights Offering Procedures*" means the procedures with respect to the Equity Rights Offering, as approved by the Bankruptcy Court.

74. "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

75. "*Exculpated Partie*s" means, collectively, and in each case in its capacity as such, (a) each of the Debtors and (b) each of the Disinterested Directors.

76. "*Exculpation*" means the exculpation as set forth in Article VIII.E of this Plan.

77. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

78. "*Existing Alkegen Holdco Interests*" means all currently issued and outstanding Interests in Alkegen Holdco, including all shares of issued and outstanding Preferred A Stock, Preferred A-1 Stock, and Senior Common Stock.

79. "*Exit Facility Documents*" means collectively, the Exit Facility Credit Agreement and any other agreements, documents, and instruments delivered or entered into in connection therewith, including, without limitation, any guarantee agreements, pledge and collateral agreements, intercreditor agreements, other security documents, and related notes (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

80. "*Exit Facility Parties*" means, collectively, the Exit Facility Agent and the Exit Term Loan Lenders.

81. "*Exit Term Loans*" means the senior secured first lien term loans under the Exit Facility.

82. "*Exit Facility Agent*" means the administrative agent under the Exit Facility Credit Agreement.

83. "*Exit Facility Credit Agreement*" means that certain senior secured first lien term loan facility agreement, to be dated on or about the Effective Date, by and among certain of the Debtors or Reorganized Debtors, the Exit Facility Agent, and the Exit Term Loan Lenders setting forth the terms and conditions of the Exit Term Loans.

84. "*Exit Facility*" means the senior secured term loan facility, incurred in accordance with the Exit Facility Documents.

85. "*Exit Term Loan Lenders*" means the term loan lenders party to the Exit Facility Credit Agreement from time to time.

86. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

87. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

88. "*Final DIP Order*" means an order entered by the Bankruptcy Court approving the DIP Facility on a final basis.

89. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, that is in full force and effect and has not been reversed, stayed, modified, vacated, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, reconsideration, or rehearing has been timely taken; or as to which, any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

90. "*First Day Pleadings*" means the first day motions and related pleadings that the Debtors File upon commencement of the Chapter 11 Cases.

91. "*First Lien Claims*" means, collectively, the First Lien Term Loan Claims and the First Lien Notes Claims.

92. "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated September 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., as borrower, the lenders from time to time party thereto, the other parties thereto, JPMorgan Chase Bank, N.A., as administrative agent, and Wilmington Savings Fund Society, FSB, as collateral agent.

93. "*First Lien Creditors*" means the Holders of First Lien Term Loan Claims and First Lien Notes Claims.

94. "*First Lien Deficiency Claims*" means any First Lien Claims that are not a First Lien Secured Claim.

95. "*First Lien Documents*" means, collectively, the First Lien Credit Agreement, the First Lien Notes Indenture, the Intercreditor Agreements, and any other documents governing the First Lien Claims or the First Lien Revolving Loan Claims, including any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

96. "*First Lien Notes*" means the first lien senior secured PIK toggle notes, due September 30, 2029 (as amended, restated, supplemented, or otherwise modified from time to time), issued pursuant to the First Lien Notes Indenture.

97. "*First Lien Notes Claims*" means any Claims arising under, derived from, based on, or related to the First Lien Notes, including outstanding principal, all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the First Lien Notes Indenture.

98. "*First Lien Notes Indenture*" means that certain first lien senior secured PIK toggle notes indenture, dated September 30, 2024 (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., as issuer, the guarantors party from time to time thereto, Wilmington Trust, National Association, as First Lien Notes Trustee, and Wilmington Savings Fund Society, FSB, as first lien shared collateral agent relating to the First Lien Notes.

99. "*First Lien Notes Trustee*" means Wilmington Trust, National Association, or any successor, in its capacity as trustee under the First Lien Notes Indenture.

100. "*First Lien Revolving Loan Claims*" means any Claims arising under, derived from, based on, or related to the First Lien Revolving Loans, including all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the First Lien Credit Agreement on account of the First Lien Revolving Loans. For the avoidance of doubt, the First Lien Revolving Loan Claims are expected to be fully repaid with the proceeds of the DIP Facility, and accordingly, such Claims are not classified pursuant to this Plan.

101. "*First Lien Revolving Loans*" means the senior secured first lien revolving loans defined as the "Revolving Loans" in the First Lien Credit Agreement.

102. "*First Lien Secured Claims*" means First Lien Claims in an amount equal to the value of the First Lien Creditors' interest in the Debtors' interest in the collateral securing the First Lien Claims pursuant to the First Lien Credit Agreement, the First Lien Notes Indenture, the 1L Pari Passu Intercreditor Agreement, the First Lien Security Agreement, and other related documents in accordance with section 506(a) of the Bankruptcy Code.

103. "*First Lien Security Agreement*" means that certain First Lien Security Agreement, dated September 30, 2024, (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., the other pledgors party thereto from time to time, and Wilmington Savings Fund Society, FSB, as collateral agent.

104. "*First Lien Term Loan Claims*" means any Claims arising under, derived from, based on, or related to the First Lien Term Loans, including outstanding principal, all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the First Lien Credit Agreement.

105. "*First Lien Term Loans*" means the senior secured first lien term loans defined as the "Term Loans" in the First Lien Credit Agreement.

106. "*General Unsecured Claim*" means any Unsecured Claim against any of the Debtors, other than: (a) an Unsecured Funded Debt Claim; (b) an Other Priority Claim; (c) a Priority Tax Claim; (d) an Intercompany Claim; or (e) a Section 510(b) Claim.

107. "*Governance Term Sheet*" means that certain Governance Term Sheet attached as Exhibit D to the Restructuring Support Agreement.

108. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

109. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

110. "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

111. "*Intercompany Claim*" means any Allowed Claim against a Debtor held by another Debtor or Debtor's Affiliate that is a direct or indirect subsidiary of any Debtor, except Luyang and its subsidiaries.

112. "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor or Debtor's Affiliate other than an Alkegen Holdco Interest.

113. "*Intercompany Release*" means any release by any Debtor of any Debtor or any Related Party of a Debtor.

114. "*Intercreditor Agreements*" means the 1L Pari Passu Intercreditor Agreement and the 1L/2L/3L Intercreditor Agreement.

115. "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interest, unit or share in any Debtor and any other rights, options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, redemption rights, repurchase rights, stock-settled restricted stock units, Cash-settled restricted stock units, other securities, agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor or any other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security).

116. "*Interim DIP Order*" means an order entered by the Bankruptcy Court approving the DIP Facility on an interim basis.

117. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

118. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

119. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

120. "*Luyang*" means Luyang Energy-Saving Materials Co., Ltd. (山东鲁阳节能材料股份有限公司), a company organized under the Laws of the People's Republic of China and listed on the Shenzhen Stock Exchange (Stock Code: 002088).

121. "*Management Agreement*" means that certain Management and Monitoring Services Agreement dated as of December 14, 2018, and amended and restated as of September 22, 2021 (as further amended, restated, supplemented, or otherwise modified from time to time), by and among Unifrax I, LLC, Ulysses Parent, Inc., Clearlake Capital Management IV, L.P., and Clearlake Capital Management V, L.P.

122. "*Management Incentive Plan*" means a management incentive plan, which shall consist of up to 10% of fully diluted New Equity Interests, to be implemented in the amount and on the form, terms, allocation, and vesting mechanism to be determined by the New Board.

123. "*New Alkegen*" means (a) Alkegen Holdco as reorganized on the Effective Date in accordance with this Plan, or any successor thereto, by merger, consolidation, transfer of all or substantially all assets or otherwise or (b) a new Entity agreed by the Debtors and the Required Consenting First Lien Creditors, which in either case shall be the ultimate parent of the other Reorganized Debtors on and after the Effective Date.

124. "*New Board*" means the board of directors or board of managers, as applicable, of New Alkegen.

125. "*New Corporate Governance Documents*" means the documents providing for the corporate governance of the Reorganized Debtors, as applicable, including any charters, bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, warrant agreement (including the New Equity Warrant Documents), or other organizational documents or shareholders' agreements, as applicable, certain of which may be included in the Plan Supplement, including, without limitation, the form organizational document(s) of New Alkegen.

126. "*New Equity Interests*" means the Interests of New Alkegen to be issued on the Effective Date or in connection with the Management Incentive Plan or the New Equity Warrants.

127. "*New Equity Warrant Documents*" means collectively, any and all agreements, documents, and instruments delivered or entered into in connection with, or otherwise governing, the New Equity Warrants.

128. "*New Equity Warrant Strike Price*" means a strike price for the New Equity Warrants at an implied total equity value of $2,046,000,000 of New Alkegen.

129. "*New Equity Warrants*" means the five (5) year warrants to be issued in accordance with the terms of the New Equity Warrant Documents for the purchase of up to 5.0% of the New Equity Interests, subject to dilution by the Management Incentive Plan, with a strike price equal to the New Equity Warrant Strike Price.

130. "*New Funding Principal Amount*" means $315,000,000.

131. "*New RCF*" means the new super senior revolving credit facility, if any, with an aggregate principal commitment amount of up to $150,000,000 or any quantum otherwise acceptable to the Debtors and the Required Consenting First Lien Creditors, incurred in accordance with the New RCF Documents.

132. "*New RCF Documents*" means, collectively, the Exit Facility Credit Agreement and any other documents governing the New RCF, including any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith, which may be the Exit Facility Documents.

133. "*New RCF Lenders*" means the revolving credit lenders party to the Exit Facility Credit Agreement from time to time.

134. "*Non-Voting Opt-In Deadline*" means the date by which Holders of Claims that are deemed to accept this plan, Holders of Claims that are deemed to reject this Plan, and Holders of Claims that abstain from voting on this Plan may elect to opt into the releases contained in this Plan, which shall be 4:00 P.M. (Prevailing Central Time) on August 28, 2026.

135. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

136. "*Other Secured Claim*" means any Secured Claim other than a First Lien Secured Claim, a First Lien Revolving Loan Claim, or a DIP Claim.

137. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

138. "*Petition Date*" means the first date on which any of the Debtors commence a Chapter 11 Case.

139. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims or other eligible Entities in accordance with this Plan.

140. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, and any additional documents Filed as amendments to the Plan Supplement, to be Filed by the Debtors prior to the Combined Hearing to the extent reasonably practicable, which may include the following, as applicable: (a) the Exit Facility Documents; (b) to the extent known, the identities of the members of the New Board; (c) the New Corporate Governance Documents; (d) the Schedule of Rejected Executory Contracts and Unexpired Leases; (e) the Schedule of Assumed Executory Contracts and Unexpired Leases; (f) the Schedule of Retained Causes of Action; (g) the Restructuring Transactions Memorandum; (h) the Equity Rights Offering Documents; (i) the New Equity Warrant Documents; and (j) the New RCF Documents, if applicable. To the extent any document to be set forth in the Plan Supplement is an exhibit to the Disclosure Statement, the Plan Supplement may cross-refer to such exhibit. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with this Plan, the Restructuring Support Agreement, or such documents included therein on or before the Effective Date. The Plan Supplement shall be deemed incorporated into and part of this Plan as if set forth herein in full; *provided* that in the event of a conflict between this Plan and the Plan Supplement, the Plan Supplement shall control in accordance with Article I.G of this Plan.

141. "*Preferred A Stock*" means the preferred A stock of Alkegen Holdco issued and outstanding as of the Petition Date.

142. "*Preferred A-1 Stock*" means the preferred A-1 stock of Alkegen Holdco issued and outstanding as of the Petition Date.

143. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

144. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class or category bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or category.

145. "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or as of the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

146. "*Professional Escrow Account*" means an account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

147. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.D of this Plan.

148. "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim. For the avoidance of doubt, the Transaction Expenses shall not be considered Professional Fee Claims, and any such amounts shall be paid in accordance with the Restructuring Support Agreement, the DIP Orders, and this Plan, as applicable.

149. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

150. "*Quarterly Fees*" means fees payable pursuant to section 1930(a) of the Judicial Code, including fees payable to the U.S. Trustee and any interest thereon pursuant to 31 U.S.C. § 3717.

151. "*RCF Lenders*" means the Holders of First Lien Revolving Loan Claims.

152. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

153. "*Rejecting Voter Opt-In Deadline*" means the date by which Holders of Claims that vote to Reject this Plan may elect to opt into the releases contained in this Plan, which shall be 4:00 P.M. (Prevailing Central Time) on September 21, 2026.

154. "*Related Parties*" means, individually or collectively, and each in their capacity as such: with respect to a given Entity, (a) all of such Entity's current and former Affiliates, and (b) all of such person's or Entity's, and its current and former Affiliates' current and former officers, directors, managers, Interest Holders (regardless of whether such Interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of such Entity), and the respective heirs, executors, estates, servants and nominees of the foregoing.

155. "*Released Parties*" means each of, and solely in its capacity as such, (a) the Debtors; (b) the Reorganized Debtors; (c) the Agents/Trustees; (d) the DIP Parties; (e) the RCF Lenders; (f) the Exit Facility Parties; (g) the Consenting Creditors; (h) the Sponsor; (i) the Releasing Parties; (j) each current Affiliate and former Affiliates of each Entity in clause (a) through the following clause (k); and (k) each Related Party of each Entity in clause (a) through this clause (k); *provided* that a Holder of a Claim or Interest that affirmatively opts out of the releases contained in this Plan shall not be a Released Party.

156. "*Releasing Parties*" means each of, and solely in its capacity as such, (a) the Debtors, (b) the Reorganized Debtors, (c) the Agent/Trustee; (d) the DIP Parties; (e) the RCF Lenders; (f) the Exit Facility Parties; (g) the Consenting Creditors; (h) the Sponsor; (i) all Holders of Claims that vote to accept this Plan and that do not affirmatively opt out of the releases by the Accepting Voter Opt-Out Deadline; (j) all Holders of Claims that vote to reject this Plan that affirmatively opt into the releases prior to the Rejecting Voter Opt-In Deadline; (k) all Holders of Claims that are deemed to accept this Plan or are deemed to reject this Plan and that affirmatively opt into the releases prior to the Non-Voting Opt-In Deadline; (l) all Holders of Claims that abstain from voting on this Plan and

that affirmatively opt into the releases prior to the Non-Voting Opt-In Deadline; (m) each current and former Affiliate of each Entity that is a Releasing Party in clause (a) through the following clause (n); and (n) each Related Party of each Entity that is a Releasing Party in clause (a) through this clause (n) and for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable law.

157. "*Reorganized Debtors*" means, collectively, the Debtors, as reorganized pursuant to and under this Plan, on and after the Effective Date, or any successor or assign thereto, by merger, consolidation, or otherwise, including any new Entity that is a subsidiary of New Alkegen established in connection with the implementation of the Restructuring Transactions.

158. "*Required Consenting First Lien Creditors*" means the "Required Consenting First Lien Creditors" as defined in the Restructuring Support Agreement.

159. "*Restructuring Transactions Memorandum*" means the summary of transaction steps to complete the Restructuring Transactions contemplated by this Plan, which shall be consistent with the Restructuring Support Agreement and this Plan and otherwise reasonably acceptable to the Required Consenting First Lien Creditors. The Restructuring Transactions Memorandum shall, among other things, designate New Alkegen.

160. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, entered into and dated as of July 19, 2026, by and among the Debtors and the Consenting Stakeholders, including all exhibits, schedules, and other attachments thereto, as such agreement may be further amended, modified, or supplemented from time to time, solely in accordance with its terms, which is attached as Exhibit B to the Disclosure Statement.

161. "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Reorganized Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan and the Restructuring Support Agreement, including the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, dispositions, liquidations, or other corporate transactions, as described in Article IV.B of this Plan and consistent with the Restructuring Transactions Memorandum.

162. "*Roll-Up DIP Claims*" means any DIP Claim held by a DIP Lender or DIP Agent on account of, or relating to the Roll-Up DIP Instruments, which includes DIP Claims for all principal amounts, outstanding interest, reasonable and documented fees, expenses and costs, and other charges of the DIP Lenders on account of the Roll-Up DIP Instruments, in each case payable under and in accordance with the DIP Documents or the DIP Orders.

163. "*Roll-Up DIP Instruments*" means the term loans or notes issued under the DIP Facility in an aggregate principal amount equal to the aggregate principal amount of the DIP New Money Instruments that refinance the First Lien Term Loans or First Lien Notes held by the DIP Lenders on a cashless, dollar-for-dollar, and Pro Rata basis in accordance with the Restructuring Support Agreement and the DIP Documents. Unless otherwise specified herein, Roll-Up DIP Instruments shall not include "Contingent Roll-Up Instruments" (as such term is defined in the DIP Documents).

164. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means, to the extent applicable, a schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases (with proposed Cure amounts) to be assumed by the Debtors pursuant to this Plan, which schedule (if any) shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Required Consenting First Lien Creditors.

165. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means, to the extent applicable, a schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, which schedule (if any) shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Required Consenting First Lien Creditors.

166. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that shall vest in the Reorganized Debtors on the Effective Date, that are not released, waived, exculpated, or transferred pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time, and which schedule (including any amendments, supplements, or modifications thereto) shall be in form and substance reasonably acceptable to the Required Consenting First Lien Creditors.

167. "*Second Lien Notes*" means the second lien senior secured PIK toggle notes, due September 30, 2029 (as amended, restated, supplemented, or otherwise modified from time to time), issued pursuant to the Second Lien Notes Indenture.

168. "*Second Lien Notes Claims*" means any Claims arising under, derived from, based on, or related to the Second Lien Notes, including outstanding principal, all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Second Lien Notes Indenture.

169. "*Second Lien Notes Documents*" means, collectively, the Second Lien Notes Indenture, the 1L/2L/3L Intercreditor Agreement, and any other documents governing the Second Lien Notes, including any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

170. "*Second Lien Notes Indenture*" means that certain second lien senior secured PIK toggle notes indenture, dated as of September 30, 2024, (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., as issuer, the guarantors party from time to time thereto, and Wilmington Trust, National Association, as Second Lien Notes Trustee and notes collateral agent, relating to the Second Lien Notes.

171. "*Second Lien Notes Trustee*" means Wilmington Trust, National Association, or any successor, in its capacities as trustee and collateral agent under the Second Lien Notes Indenture.

172. "*Section 510(b) Claims*" means any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code.

173. "*Secured Claim*" means a Claim that is: (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured claim.

174. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

175. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

176. "*Senior Common Stock*" means the senior common stock of Alkegen Holdco issued and outstanding as of the Petition Date.

177. "*Solicitation Agent*" means Kroll Restructuring Administration LLC in its capacity as the noticing, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

178. "*Solicitation Materials*" means all materials to be distributed in connection with the solicitation of votes to accept this Plan.

179. "*Sponsor*" means the "Sponsor" as defined in the Restructuring Support Agreement.

180. "*Third Lien Notes*" means the senior secured notes, due September 30, 2028, (as amended, restated, supplemented, or otherwise modified from time to time), issued pursuant to the Third Lien Notes Indenture.

181. "*Third Lien Notes Claims*" means any Claims arising under, derived from, based on, or related to the Third Lien Notes, including outstanding principal, all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Third Lien Notes Indenture.

182. "*Third Lien Notes Documents*" means, collectively, the Third Lien Notes Indenture, the 1L/2L/3L Intercreditor Agreement, and any other documents governing the Third Lien Notes, including any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

183. "*Third Lien Notes Indenture*" means that certain indenture dated September 30, 2021, (as amended, restated, supplemented, or otherwise modified from time to time), by and among Unifrax Escrow Issuer Corporation, as issuer, and Wilmington Trust, National Association, as Third Lien Notes Trustee and notes collateral agent, relating to the Third Lien Notes.

184. "*Third Lien Notes Trustee*" means Wilmington Trust, National Association, or any successor, in its capacities as trustee and collateral agent under the Third Lien Notes Indenture.

185. "*Third-Party Release*" means the releases set forth in Article VIII.D of this Plan.

186. "*Transaction Expenses*" means all reasonable and documented prepetition and postpetition costs and expenses of the Ad Hoc Group and members thereof (including the fees and expenses of the Ad Hoc Group Advisors accrued since the inception of their respective engagements and not previously paid by, or on behalf of, the Debtors) incurred in connection with the Debtors, their restructuring process, the Restructuring Transactions, the Restructuring Support Agreement, the DIP Facility, the Definitive Documents and other transactions contemplated and permitted hereby and thereby.

187. "*Trustee*" means any of the First Lien Notes Trustee, Second Lien Notes Trustee, Third Lien Notes Trustee, Unsecured Notes Trustee, or any collateral trustee, or other trustee or similar Entity under the First Lien Notes Indenture, Second Lien Notes Indenture, the Third Lien Notes Indenture, and/or the Unsecured Notes Indenture, including any successors thereto, solely in its capacity as such.

188. "*U.S. Trustee*" means the United States Trustee for the Northern District of Texas.

189. "*Unclaimed Distribution*" means any distribution under this Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check within 180 calendar days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution within 180 calendar days of receipt; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

190. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

191. "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

192. "*Unsecured Claim*" means any Claim that is not a Secured Claim.

193. "*Unsecured Funded Debt Claims*" means, collectively, the First Lien Deficiency Claims, the Second Lien Notes Claims, the Third Lien Notes Claims, and the Unsecured Notes Claims.

194. "*Unsecured Funded Debt Equity Interests*" means 1.0% of the New Equity Interests, subject to dilution on account of the New Equity Interests issued pursuant to the Management Incentive Plan and the New Equity Warrants (but not the Equity Rights Offering or the Equity Backstop Premium).

195. "*Unsecured Notes*" means the senior notes due September 30, 2029 (as amended, restated, supplemented, or otherwise modified from time to time), issued pursuant to the Unsecured Notes Indenture.

196. "*Unsecured Notes Claims*" means any Claims arising under, derived from, based on, or related to the Unsecured Notes, including outstanding principal, all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Unsecured Notes Indenture.

197. "*Unsecured Notes Documents*" means, collectively, the Unsecured Notes Indenture, and any other documents governing the Unsecured Notes, including any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

198. "*Unsecured Notes Indenture*" means that certain indenture dated September 30, 2021, (as amended, restated, supplemented, or otherwise modified from time to time), by and among ASP Unifrax Holdings, Inc., as issuer, the guarantors from time to time party thereto, and Wilmington Trust, National Association, as Unsecured Notes Trustee, relating to the Unsecured Notes.

199. "*Unsecured Notes Trustee*" means Wilmington Trust, National Association, or any successor, in its capacity as trustee under the Unsecured Notes Indenture.

*B. Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (2) shall affect any party's consent rights over any of the Definitive Documents or any amendments thereto as provided for in the Restructuring Support Agreement; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) subject to the provisions of any contract, charter, bylaws, limited liability company agreements, operating agreements, certificates of incorporation, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document created or entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable Law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this

Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*D. Governing Law.*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of Laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the Laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

*E. Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*F. Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*G. Controlling Document.*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

*H. Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of parties set forth in the Restructuring Support Agreement, the DIP Documents, and the Equity Backstop Commitment Agreement with respect to the form and substance of this Plan, all exhibits to this Plan, and the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein and nothing in this Plan is intended to or shall abrogate such consent or consultation rights or be deemed a waiver as to any such rights.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement, DIP Documents, or Equity Backstop Commitment Agreement shall not impair such rights and obligations.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A. Administrative Claims.*

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtors against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, on the date of such allowance or as soon as reasonably practicable thereafter, but in any event no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court. For the avoidance of doubt, Holders of Administrative Claims that are Professional Fee Claims or Disinterested Director Fee Claims need not file requests for payment of Administrative Claims with the Bankruptcy Court; *provided* that the foregoing shall not relieve the Professionals of their obligations to File fee applications.

**Except as otherwise provided in this Article II.A or by a Final Order entered by the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the applicable Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against any Debtor, Reorganized Debtor, or their respective property and such Administrative Claims shall be deemed disallowed and discharged as of the Effective Date.**

*B. DIP Claims.*

All DIP Claims shall be deemed Allowed as of the Effective Date in the full amount outstanding under the DIP Documents as of the Effective Date (including any unpaid accrued interest and unpaid fees, expenses, and other obligations under the DIP Documents as of the Effective Date).

Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such an Allowed DIP Claim, each Holder of an Allowed DIP Claim will receive (a) (i) on the Effective Date, in an amount equal to and on account of its Pro Rata share of the New Funding Principal Amount, Exit Term Loans through a cashless conversion of its Allowed DIP Claims in an equal amount on a dollar-for-dollar basis in accordance with the DIP Documents and Exit Facility Documents, *plus* (ii) on the Effective Date, payment in full in Cash, in an amount equal to its remaining Allowed DIP Claims that are not converted to the Exit Term Loans in accordance with the prior clause (i) and not on account of the

DIP Backstop Premium; *provided* that if a Holder of an Allowed DIP Claim participates in the Equity Rights Offering, then such a Holder may subscribe to its Pro Rata share of Equity Rights Offering Equity by contributing its Allowed Roll-Up DIP Claim in an amount equal to the Cash it is otherwise obligated to pay to the Debtors to subscribe to such Equity Rights Offering Equity, in lieu of such Cash payment, *plus* (iii) to the extent it is a Backstop Party, its Pro Rata share of the DIP Backstop Premium, to the extent not previously paid, in Cash in accordance with the Restructuring Support Agreement and the DIP Documents, or (b) such other treatment agreed upon between the Debtors and such a Holder of an Allowed DIP Claim. A DIP Claim contributed by its Holder to satisfy the funding obligation of such Holder in the Equity Rights Offering shall be canceled, released, and extinguished, and will be of no further force and effect, and Holder of such a DIP Claim shall not receive or retain any distribution, property, or value on account of such DIP Claim other than the Equity Rights Offering Equity it is entitled to receive in the Equity Rights Offering pursuant to the Equity Rights Offering Documents.

Following the satisfaction of the Allowed DIP Claims and the DIP Facility in accordance with this Article II.B, the DIP Documents, and all related loan documents shall be deemed canceled, all Liens on property of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility shall automatically terminate, and all collateral subject to such Liens shall be automatically released, in each case, without further action by the DIP Agent or the DIP Lenders and without further order of the Bankruptcy Court, and all guarantees of the Debtors and Reorganized Debtors arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Agent or the DIP Lenders. The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release, and discharge as reasonably requested by the Debtors or the Reorganized Debtors, as applicable. For the avoidance of doubt, the aforementioned cancelations, terminations, releases, and discharges relating to the DIP Facility, DIP Claims, and DIP Liens shall not affect the Exit Facility, including with respect to the validity and perfection of Claims and Liens thereunder.

*C. Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and opportunity for a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Escrow Account, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

2. Professional Escrow Account.

No later than the Effective Date, the Debtors shall establish and fund the Professional Escrow Account with Cash equal to the Professional Fee Amount. The Professional Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Escrow Account, and to the extent that funds held in the Professional Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed

Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of this Plan. When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than one (1) day before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

*E. Payment of Statutory Fees.*

All Quarterly Fees, to the extent applicable, due prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, all Quarterly Fees shall be paid to the U.S. Trustee when due and payable, until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first. Nothing in this Plan shall discharge or release any Quarterly Fees. The U.S. Trustee shall not be required to File a Proof of Claim or request for payment for Quarterly Fees. The Reorganized Debtors shall timely File all required monthly operating reports and post-confirmation quarterly reports in a form prescribed by the U.S. Trustee until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

*F. Transaction Expenses.*

To the extent not previously paid prior to or during the course of the Chapter 11 Cases, the Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date without any requirement (1) to File a fee application with the Bankruptcy Court or (2) for review or approval by the Bankruptcy Court or any other party. All Transaction Expenses to be paid on the Effective Date shall be estimated as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Transaction Expenses; *provided*, *further*, that any difference in (a) estimated Transaction Expenses on and including the Effective Date as compared to (b) Transaction Expenses actually incurred on and including the Effective Date shall be reconciled following the submission of a final invoice by the relevant Entity no later than forty-five (45) days after the Effective Date. In addition, the Debtors and Reorganized Debtors (as applicable) shall continue to pay Transaction Expenses related to implementation, Consummation, and defense of this Plan after the Effective Date upon receipt of an invoice from any Entity requesting such Transaction Expenses with reasonable detail (but without the need for time detail). Notwithstanding anything to the contrary contained herein, any unpaid Claim payable on account of the Transaction Expenses that the Debtors are obligated to pay under the Restructuring Support Agreement, DIP Documents, Equity Backstop Commitment Agreement, or any other applicable agreement with the Debtors, and for which the Debtors have received an invoice, shall constitute an Allowed Administrative Claim and shall be paid on a current basis in full in Cash on the Effective Date or as soon as reasonably practicable thereafter, or to the extent accrued after the Effective Date, on a current basis in full in Cash as

invoiced. Nothing herein shall require the DIP Parties or First Lien Creditors to file applications, a Proof of Claim, or otherwise seek approval of the Bankruptcy Court as a condition to payment of such Allowed Administrative Claims.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A. Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan constitutes a separate Plan proposed by each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors, except for Class 8, which shall only apply to Alkegen Holdco, and Class 7, which shall not apply to Alkegen Holdco. All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Unsecured Funded Debt Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Existing Alkegen Holdco Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Reorganized Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter. In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1. Class 1 – Other Secured Claims

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor or Reorganized Debtor and with the consent of the Required Consenting First Lien Creditors, either:

(i) payment in full in Cash of its Allowed Other Secured Claim;

(ii) the collateral securing its Allowed Other Secured Claim;

(iii) Reinstatement of its Allowed Other Secured Claim; or

(iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under this Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2. Class 2 – Other Priority Claims

(a) *Classification*: Class 2 consists of all Other Priority Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code, which renders such Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired under this Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3. Class 3 – First Lien Secured Claims

(a) *Classification*: Class 3 consists of all First Lien Secured Claims.

(b) *Allowance*: The First Lien Secured Claims shall be deemed Allowed in the aggregate amount of $997,529,000.

(c) *Treatment*: Except to the extent that a Holder of an Allowed First Lien Secured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed First Lien Secured Claim shall receive (a) its Pro Rata share of (i) Exit Term Loans in an aggregate principal amount equal to $85,000,000 and (ii) 100% of the New Equity Interests, subject to dilution on account of the New Equity Interests issued pursuant to the Management Incentive Plan, the Equity Rights Offering, the Equity Backstop Premium, the Unsecured Funded Debt Equity Interests, and the New Equity Warrants, and (b) the

receipt of subscription rights to participate Pro Rata (on account of its First Lien Secured Claims) in the Equity Rights Offering.

(d) *Voting*: Class 3 is Impaired under this Plan. Holders of Allowed First Lien Secured Claims are entitled to vote to accept or reject this Plan.

4. Class 4 – Unsecured Funded Debt Claims

(a) *Classification*: Class 4 consists of all Unsecured Funded Debt Claims.

(b) *Allowance*: The Unsecured Funded Debt Claims shall be deemed Allowed in the aggregate amount of $1,903,547,281.

(c) *Treatment*: Except to the extent that a Holder of an Allowed Unsecured Funded Debt Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Unsecured Funded Debt Claim shall receive its Pro Rata share of (a) the New Equity Warrants and (b) the Unsecured Funded Debt Equity Interests.

(d) *Voting:* Class 4 is Impaired under this Plan. Holders of Allowed Unsecured Funded Debt Claims are entitled to vote to accept or reject this Plan.

5. Class 5 – General Unsecured Claims

(a) *Classification*: Class 5 consists of all General Unsecured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed General Unsecured Claim shall (i) be Reinstated, (ii) receive payment in full in Cash (on or as soon as reasonably practicable after the Effective Date), or (iii) such other treatment that renders such Allowed General Unsecured Claims Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 5 is Unimpaired under this Plan. Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

6. Class 6 – Intercompany Claims

(a) *Classification*: Class 6 consists of all Intercompany Claims.

(b) *Treatment*: On the Effective Date, each Intercompany Claim shall be (i) Reinstated, (ii) adjusted, converted to equity, set off, settled, distributed, or contributed, or (iii) discharged, canceled, released without any distribution on account of such Intercompany Claims, or otherwise addressed at the option of the Debtors and Required Consenting First Lien Creditors.

(c) *Voting*: Class 6 is Unimpaired under this Plan if Intercompany Claims are Reinstated or Impaired under this Plan if Intercompany Claims are canceled. Holders of Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

7. Class 7 – Intercompany Interests

(a) *Classification*: Class 7 consists of all Intercompany Interests.

(b) *Treatment:* On the Effective Date, Intercompany Interests shall be (i) Reinstated or (ii) set off, settled, discharged, distributed, contributed, merged, canceled, eliminated, released without any distribution on account of such Intercompany Interests, or otherwise addressed at the option of the Debtors and Required Consenting First Lien Creditors.

(c) *Voting*: Class 7 is Unimpaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

8. Class 8 – Existing Alkegen Holdco Interests

(a) *Classification*: Class 8 consists of all Existing Alkegen Holdco Interests.

(b) *Treatment*: On the Effective Date, all Existing Alkegen Holdco Interests shall be canceled and will be of no further force and effect, regardless of whether surrendered for cancelation, and Holders of Existing Alkegen Holdco Interests shall receive no recovery or distribution on account thereof and each Holder of an Existing Alkegen Holdco Interest shall not receive or retain any distribution, property, or other value on account of such Existing Alkegen Holdco Interests.

(c) *Voting*: Class 8 is Impaired under this Plan. Holders of Allowed Existing Alkegen Holdco Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Existing Alkegen Holdco Interests are not entitled to vote to accept or reject this Plan.

9. Class 9 – Section 510(b) Claims

(a) *Classification*: Class 9 consists of all Section 510(b) Claims.

(b) *Allowed Amount*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

(c) *Treatment*: On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or value on account of such Section 510(b) Claims.

(d) *Voting*: Class 9 is Impaired under this Plan. Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders (if any) are not entitled to vote to accept or reject this Plan.

*C. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

*D. Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

*E. Deemed Acceptance If No Votes Cast.*

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in a particular Class vote to accept or reject the Plan, this Plan shall be deemed accepted by the Holders of such Claims in such Class.

*F. Intercompany Interests.*

To the extent Reinstated under this Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Equity Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims. For the avoidance of doubt, unless otherwise set forth in the Restructuring Transactions Memorandum, to the extent Reinstated pursuant to this Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

*G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to Article III.B of this Plan. The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests. The Debtors reserve the right to modify this Plan in accordance with Article X hereof and the Restructuring Support Agreement to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests or reclassifying Claims to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*H. Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*I. Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including the First Lien Documents and Second Lien Notes Documents. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*J. No Substantive Consolidation.*

Although this Plan is presented as a joint chapter 11 plan for administrative convenience, this Plan does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason. Except as expressly provided herein, nothing in this Plan,

the Confirmation Order, or the Disclosure Statement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims against or in any other Debtor.

## ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THIS PLAN

*A. General Settlement of Claims and Interests.*

To the greatest extent permissible under the Bankruptcy Code and Bankruptcy Rules, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, certain of the provisions of this Plan shall constitute a good faith compromise and settlement of certain Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to this Plan. To the greatest extent permissible under the Bankruptcy Code, this Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that any such settlements and compromises included in this Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

*B. Restructuring Transactions.*

On or before the Effective Date, or as soon as reasonably practicable thereafter, the applicable Debtors or the Reorganized Debtors shall enter into and shall take any actions, including the actions set forth in the Restructuring Transactions Memorandum, as may be necessary or appropriate to effect the Restructuring Transactions, which may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan, the Plan Supplement, the Restructuring Support Agreement, and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree, which may include transfers free and clear of any liens or other interests under section 1123(a)(5)(D) of the Bankruptcy Code; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the Plan Supplement, and the Restructuring Support Agreement, and having other terms for which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law; (4) the execution and delivery of the New Corporate Governance Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation, organizational, governance, or constitutive documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution of the New Equity Interests, as applicable and as set forth herein, including the issuance and distribution of the New Equity Warrants pursuant to the New Equity Warrant Documents; (5) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (6) the consummation of the Equity Rights Offering and the issuance and distribution of the Equity Rights Offering Equity in accordance with the Equity Rights Offering Documents; (7) the reservation of equity under the Management Incentive Plan to the participants in the Management Incentive Plan as determined by the New Board; and (8) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable Law in connection with this Plan. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Plan, including the Restructuring Transactions.

Notwithstanding anything to the contrary set forth herein, the treatment of Claims, distributions, and other transactions contemplated hereby including, without limitation, the funding of the Exit Facility or the distribution of

New Equity Warrants, if any, may, at the election of the applicable participating parties, be effectuated by netting or other form of cashless implementation.

*C. Reorganized Debtors.*

On the Effective Date, the New Board shall be established in accordance with the Governance Term Sheet, and the Reorganized Debtors shall adopt their New Corporate Governance Documents. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan, in each case consistent with the Restructuring Transactions Memorandum. Cash payments to be made pursuant to this Plan will be made by the Debtors or Reorganized Debtors. The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under this Plan. Except as set forth herein or the Restructuring Transactions Memorandum, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, including the Exit Facility Documents, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Corporate Governance Documents, as the boards of directors or boards of managers of the applicable Reorganized Debtors deem appropriate.

*D. Sources of Consideration for Plan Distributions.*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions under this Plan with: (1) the Debtors' Cash on hand as of the Effective Date, (2) the Exit Facility, (3) the proceeds of the Equity Rights Offering, (4) the proceeds of the New RCF, if applicable, (5) the New Equity Interests, and (6) the New Equity Warrants.

1. <u>Exit Facility</u>.

On and as of the Effective Date, the Reorganized Debtors shall enter into the Exit Facility pursuant to the Exit Facility Documents and the Restructuring Transactions Memorandum. Confirmation of this Plan shall constitute (a) approval of the Exit Facility and the Exit Facility Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith) and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the Exit Facility including executing and delivering the Exit Facility Documents, in each case, without any further notice to or order of the Bankruptcy Court. On the Effective Date, the Exit Facility shall be issued and distributed as provided for in the Restructuring Transactions Memorandum (as applicable) pursuant to, and in accordance with, this Plan.

As of the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facility Documents; (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever; and (d) shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law. As of the Effective Date, the Exit Facility Agent, for the benefit of the Exit Term Loan Lenders, shall have a valid, binding, perfected, non-avoidable, and enforceable Lien on and security interest in the collateral and with priority specified in the Exit Facility Documents, and valid, binding, non-avoidable, and enforceable guarantee from each guarantor specified in the Exit Facility Documents. To the extent provided in the Exit Facility Documents, the Exit Facility Agent or Holder(s) of Liens under the Exit Facility Documents are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Facility Documents have been granted in good faith, for legitimate business purposes, and for reasonably

equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law, and the priorities of such Liens and security interests shall be as set forth in the Exit Facility Documents. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

2. New RCF.

On or after the Effective Date, the Reorganized Debtors may enter into the New RCF pursuant to the New RCF Documents. The terms of the New RCF shall be consistent with the Restructuring Support Agreement and in form and substance acceptable to the Required Consenting First Lien Creditors.

To the extent applicable, Confirmation of this Plan shall constitute (a) approval of the New RCF and the New RCF Documents (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith) and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take any and all actions necessary or appropriate to consummate the New RCF, including executing and delivering the New RCF Documents, in each case, without any further notice to or order of the Bankruptcy Court.

To the extent applicable, as of the Effective Date, all of the Liens and security interests to be granted in accordance with the New RCF Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the New RCF Documents; (c) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever; and (d) shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law. As of the Effective Date, the Exit Facility Agent, for the benefit of the New RCF Lenders, shall have a valid, binding, perfected, non-avoidable, and enforceable Lien on and security interest in the collateral and with priority specified in the New RCF Documents, and valid, binding, non-avoidable, and enforceable guarantee from each guarantor specified in the New RCF Documents. To the extent provided in the New RCF Documents, the Exit Facility Agent, or Holder(s) of Liens under the New RCF Documents are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the New RCF Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law, and the priorities of such Liens and security interests shall be as set forth in the New RCF Documents. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

For the avoidance of doubt, all provisions in this Plan, including Article IV.D.1, with respect to the Exit Facility shall apply with the same force and effect to the New RCF.

3. New Equity Interests.

On the Effective Date, New Alkegen shall issue the New Equity Interests in accordance with the Restructuring Transactions Memorandum. The issuance of the New Equity Interests, including the New Equity Warrants by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests. The Reorganized Debtors shall be authorized to issue a certain number of shares, units, or equity interests (as the case may be based on how the New Equity Interests are denominated and the identity of New Alkegen issuing such shares, units, or equity interests) of New Equity Interests required to be issued under this Plan and pursuant to their New Corporate Governance Documents and otherwise consistent with the Restructuring Support Agreement (and the exhibits thereto). On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall issue or enter into all securities, notes, instruments, certificates, and other documents required to be issued or entered into pursuant to this Plan. The New Corporate Governance Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms. All Holders of Allowed Claims entitled to distribution of New Equity Interests hereunder shall be deemed to be a party to, and bound by, the New Corporate Governance Documents, regardless of whether such Holder has executed a signature page thereto.

All of the New Equity Interests (whether denominated as shares, units, or other equity interests) issued or authorized to be issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in this Plan and the New Corporate Governance Documents applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Equity Interests shall be deemed as its agreement to the applicable New Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.

(a) New Equity Warrants.

On the Effective Date, each Holder of an Allowed Unsecured Funded Debt Claim shall receive its Pro Rata share of the New Equity Warrants under this Plan, issued in accordance with the New Equity Warrant Documents.

The issuance of the New Equity Warrants shall be authorized without the need for any further corporate action and without any further action by the Holders of Claims other than as set forth herein. Each distribution and issuance of the New Equity Warrants under this Plan shall be governed by the New Equity Warrant Documents.

For the avoidance of doubt, any Entity's acceptance of the New Equity Warrants shall be deemed as its agreement to the New Equity Warrant Documents and the New Corporate Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with its terms.

(b) Equity Rights Offering.

In accordance with the Equity Rights Offering Documents, New Alkegen shall consummate the Equity Rights Offering on the Effective Date by offering Equity Rights Offering Equity in an aggregate value equal to the Equity Rights Offering Amount. The rights to participate in the Equity Rights Offering shall be distributed to Holders of Allowed First Lien Secured Claims as of the DIP Participation Deadline in accordance with the Equity Rights Offering Documents and this Plan. Holders of Allowed First Lien Secured Claims may participate in the Equity Rights Offering and subscribe to Equity Rights Offering Equity in accordance with the Equity Rights Offering Documents. To the extent a Holder of an Allowed First Lien Secured Claim is a Consenting First Lien Creditor and elected to commit to the DIP Facility pursuant to the Restructuring Support Agreement, such Holder is required to subscribe to the Equity Rights Offering for its Pro Rata share based on the proportion that such Holder's First Lien Claims bears to the aggregate amount of First Lien Claims outstanding on the DIP Participation Deadline. To the extent a Holder of an Allowed First Lien Secured Claim is also a Holder of an Allowed DIP Claim (whether on account of commitments pursuant to the Restructuring Support Agreement or trading of DIP Claims after the DIP Participation Deadline), such Holder may subscribe to its Pro Rata share of Equity Rights Offering Equity by contributing its Allowed Roll-Up DIP Claim to the Debtors in an amount equal to the Cash it is otherwise obligated to pay to the Debtors to subscribe to such Equity Rights Offering Equity, in lieu of such Cash payment, in accordance with Article II.B of this Plan.

The Equity Rights Offering shall be backstopped by the Backstop Parties in accordance with the Equity Backstop Commitment Agreement and the Equity Rights Offering Documents. Other than with respect to the Backstop Parties' commitment to backstop the Equity Rights Offering as set forth in the Equity Rights Offering Documents, Holders of Allowed First Lien Secured Claims shall not have the right to subscribe to more or less than its Pro Rata share of the Equity Rights Offering Equity. As consideration for providing the Equity Backstop Commitment, each Backstop Party will receive its Pro Rata share of the Equity Backstop Premium in accordance with the Equity Rights Offering Documents.

To the extent that the rights to subscribe to the Equity Rights Offering Equity are deemed to be "Securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state Securities Laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code (or the applicable exemption from the federal, state, or local Securities Law with respect to the offering, distribution, and issuance of Securities) apply to the offering, issuance, and distribution of such rights, and to the extent such exemption is not available, then such New Equity Interests will be offered, issued, and distributed under this Plan pursuant to section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration.

On the Effective Date, the proceeds of the Equity Rights Offering shall be used first, to pay DIP Claims entitled to cash payment under the Plan and second, by the Debtors or Reorganized Debtors to pay other emergence costs, Transaction Expenses, and for general corporate purposes.

(c) Unsecured Funded Debt Equity Interests.

On the Effective Date, each Holder of an Allowed Unsecured Funded Debt Claim shall receive its Pro Rata share of the Unsecured Funded Debt Equity Interests under this Plan. The issuance of the Unsecured Funded Debt Equity Interests shall be authorized without the need for any further corporate action and without any further action by the Holders of Claims other than as set forth herein.

*E. Corporate Existence.*

Except as otherwise provided in this Plan, the Confirmation Order, the Plan Supplement, or any agreement, instrument, or other document incorporated therein, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation or organization documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation or organization documents) are amended under this Plan or otherwise, in each case, consistent with the Restructuring Support Agreement (which are incorporated herein pursuant to Article I.H), and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law). After the Effective Date, the respective certificate of incorporation and bylaws (or other formation or organization documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

On or after the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*F. Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Confirmation Order, this Plan, the Plan Supplement, or any agreement, instrument, or other document incorporated therein, or entered into in connection therewith or pursuant thereto, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan, including Interests held by the Debtor in any non-Debtor Affiliates, shall vest in each respective

Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, no Reorganized Debtor (including any Reorganized Debtor ultimately being wound-down and liquidated in connection with the Restructuring Transactions) shall be treated as being liable on any Claim that is discharged pursuant to this Plan.

*G. Cancelation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in this Plan or the Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests (including Existing Alkegen Holdco Interests) shall be canceled, and all present and future obligations and liabilities, guarantees, pledges, actions, suits, accounts or demands, covenants, and indemnities (both actual and contingent) of the Debtors and any non-Debtor Affiliates thereunder or in any way related thereto, shall be deemed satisfied in full, released, canceled, discharged, and of no force or effect, without any need for further action or approval by the Bankruptcy Court or for a Holder to take further action, and the Agents shall be released from all duties thereunder.

Holders of or parties to such canceled instruments, Existing Alkegen Holdco Interests, and other documentation will have no rights arising from or relating to such instruments, Interests, and other documentation, or the cancelation thereof, except the rights provided for or reserved pursuant to this Plan. Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Article VI hereof, the First Lien Documents, Second Lien Notes Documents, Third Lien Notes Documents, Unsecured Notes Documents, and DIP Documents shall continue in effect after the Effective Date to the extent necessary to, and solely for the purposes of, (a) allowing Holders of Allowed Claims arising under the First Lien Documents, Second Lien Notes Documents, Third Lien Notes Documents, Unsecured Notes Documents, and DIP Documents to receive distributions under this Plan on account of such Claims, if any, (b) allowing and preserving the rights of the Agents/Trustees to receive and make distributions on account of the Allowed Claims arising under the First Lien Documents, Second Lien Notes Documents, Third Lien Notes Documents, Unsecured Notes Documents, and DIP Documents pursuant to this Plan, (c) permitting the Agents/Trustees to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce any obligation (if any) owed to such Agents/Trustees or their respective Holders of Allowed Claims under this Plan in accordance with the First Lien Documents, Second Lien Notes Documents, Third Lien Notes Documents, Unsecured Notes Documents, and DIP Documents, as applicable, and (d) permitting the Agents/Trustees to perform any functions that are necessary to effectuate the foregoing; *provided*, *however*, that (1) the preceding proviso shall not affect the discharge of Claims or Interests and the releases pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in this Plan, and (2) except as otherwise provided in this Plan, the terms and provisions of this Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under this Plan. The Agents/Trustees shall be discharged and shall have no further obligation or liability except as provided in this Plan and the Confirmation Order, and after the performance by the Agents/Trustees and their representatives and professionals of any obligations and duties required under or related to this Plan or Confirmation Order, the Agents/Trustees shall be relieved of and released from any obligations and duties arising thereunder. The Agents/Trustees shall be deemed to have received any necessary direction for them to effectuate the terms of the Plan. For the avoidance of doubt, nothing in this Article IV.G modifies section 524(e) of the Bankruptcy Code.

*H. Corporate Action.*

On or before the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated under this Plan (including the Restructuring Transactions Memorandum and the other documents contained in the Plan Supplement) shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the Compensation and Benefits Programs; (2) selection of the directors and officers for the Reorganized Debtors; (3) the issuance and distribution of the New Equity Interests, including the New Equity Warrants, and the consummation of the Equity Rights Offering; (4) implementation of the Restructuring Transactions; (5) entry into the Exit Facility Documents; (6) entry into or adoption of the New Corporate Governance Documents; (7) the reservation of the Management Incentive Plan for allocation by the New Board; (8) the assumption, assumption and assignment,

or rejection, as applicable, of Executory Contracts and Unexpired Leases; and (9) all other acts or actions contemplated by this Plan or reasonably necessary or appropriate to consummate this Plan or the Restructuring Transactions (whether to occur before, on, or after the Effective Date). On the Effective Date, all matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtor, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, the New Corporate Governance Documents, the Exit Facility Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy Law.

*I. New Corporate Governance Documents.*

On or immediately prior to the Effective Date, the New Corporate Governance Documents shall be automatically adopted by the applicable Reorganized Debtors and shall supersede any existing organizational documents. To the extent required under this Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors will file its New Corporate Governance Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable Laws of the respective state or country of organization. The New Corporate Governance Documents will (a) authorize the issuance of the New Equity Interests, and (b) prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, each Reorganized Debtor may amend and restate its respective New Corporate Governance Documents as permitted by the Laws of its jurisdiction of formation and the terms of such documents.

*J. Indemnification Obligations.*

All indemnification provisions currently in place consistent with applicable Law (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) as of the Petition Date for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall, to the fullest extent permitted by applicable Law, (a) be Reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date, (b) be assumed by the Reorganized Debtors, and (c) not be limited, reduced, or terminated after the Effective Date; *provided*, that the immediately preceding subclauses (a)–(c) shall not apply to any obligation of any Debtors to indemnify, hold harmless, or any obligation of similar import that is on account of conduct determined in a Final Order as constituting a criminal act, actual fraud, gross negligence, or willful misconduct. For the avoidance of doubt, subject to the occurrence of the Effective Date, the indemnification obligations in the proviso of the immediately preceding sentence shall be deemed rejected by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.

As to directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of each of the Debtors, as applicable, in each case to the extent that such Person or Entity was employed by any of the Debtors on the Petition Date, such indemnification provisions shall (1) not be discharged, impaired, or otherwise affected in any way, including by this Plan, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced, or terminated after the Effective Date, and (4) survive the effectiveness of this Plan on terms no less favorable to such directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under this Plan and shall continue as obligations of the Reorganized Debtors.

*K. Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of directors of Alkegen Holdco shall expire, such current directors shall be deemed to have resigned, and all of the directors for the initial term of the New Board shall be appointed in accordance with the New Corporate Governance Documents; *provided* that, pursuant to this Plan, the Disinterested Directors shall review and approve Professional Fee Claims filed after the Effective Date by Professionals acting at their direction in accordance with the applicable retention orders. The Disinterested Directors shall not have any of their privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Reorganized Debtors or any other entity without the Disinterested Directors' prior written consent. Each Disinterested Director retains the right to review, approve, and make decisions, and to file papers and be heard before the Bankruptcy Court, on all matters under their continuing authority pursuant to this section of the Plan. To the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement or prior to the Combined Hearing, consistent with section 1129(a)(5) of the Bankruptcy Code. In subsequent terms, the directors shall be selected in accordance with the New Corporate Governance Documents. Each director and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the applicable New Corporate Governance Documents and other constituent documents.

The officers of the Reorganized Debtors shall be the same as the officers of the Debtors, except where modified by the boards of directors of the Debtors or Reorganized Debtors, as applicable.

*L. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record, to the extent not inconsistent with any provisions of this Plan, such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the Exit Facility Documents entered into, and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

*M. Certain Securities Law Matters.*

The offering of any New Equity Interests before the Petition Date and any New Equity Interests issuable on account of the Management Incentive Plan shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or in reliance on Regulation S under the Securities Act.

The offering, issuance, and distribution of New Equity Interests (other than on account of the Management Incentive Plan) after the Petition Date, including the Equity Rights Offering Equity via the Equity Rights Offering, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or local Law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code, and to the extent such exemption is not available, then such New Equity Interests will be offered, issued and distributed under this Plan pursuant to section 4(a)(2) of the Securities Act, Regulation D or Rule 701 promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration.

The shares of New Equity Interests to be issued under this Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof that are not, and have not been within 90 days of such transfer, an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities Laws and any rules and regulations of the United States Securities and Exchange Commission or state or local securities Laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Equity Interests in the New Corporate Governance Documents.

Resales of the New Equity by any person deemed an "underwriter" under section 1145(b) of the Bankruptcy Code may require registration or an available exemption from registration, such as compliance with Rule 144 under the Securities Act, which is subject in certain instances to volume limitations, manner of sale requirements, and the availability of current public information regarding the issuer.

The shares of New Equity Interests (including those issued on account of the Management Incentive Plan) that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act and subject to any restrictions on the transferability of such New Equity Interests in the New Corporate Governance Documents.

Recipients of the New Equity Interests are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable Blue-Sky Laws for resales of New Equity Interests.

The Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order to any Entity (including DTC or any transfer agent for the New Equity Interests) with respect to the treatment of the New Equity Interests to be issued under this Plan under applicable securities Laws. DTC and any transfer agent for the New Equity Interests shall be required to accept and conclusively rely upon this Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable). Notwithstanding anything to the contrary in this Plan, no Entity (including DTC and any transfer agent for the New Equity Interests) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including, for the avoidance of doubt, whether the New Equity Interests to be issued under this Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

The Reorganized Debtors (i) shall emerge from these Chapter 11 Cases as a private company on the Effective Date and the New Equity Interests shall not be listed on a public stock exchange, (ii) shall not be voluntarily subjected to any reporting requirements promulgated by the United States Securities and Exchange Commission, and (iii) shall not be required to list the New Equity Interests on a recognized U.S. stock exchange, except in each case (if at all), as otherwise may be required pursuant to the New Corporate Governance Documents.

*N. Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to: (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity Security, or other Interest in the Debtors or the Reorganized Debtors, including the New Equity Interests; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept

for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

*O. Director and Officer Liability Insurance.*

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under this Plan as to which no Proof of Claim need be Filed. For the avoidance of doubt, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

The Reorganized Debtors shall maintain tail coverage under any D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability under, the D&O Liability Insurance Policies.

For the avoidance of doubt, the Reorganized Debtors are authorized to pay any deductible, retention, or any other cost or expense under, arising from, or related to, the D&O Liability Insurance Policies in connection with any such policy or claim made thereunder.

*P. Management Incentive Plan.*

On the Effective Date, up to 10% of the New Equity Interests, on a fully diluted basis, shall be reserved for issuance in connection with the Management Incentive Plan. The terms and conditions of the Management Incentive Plan, including with respect to the amount, form, terms, allocation, and vesting of the Management Incentive Plan or other equity-based awards, shall be determined at the discretion of the New Board.

*Q. Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof and any applicable Final Order, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date. Any retained Causes of Action shall remain with the Debtors and shall vest with the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly**

**reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, including Article VIII hereof.** The Reorganized Debtors may settle any such Causes of Action without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors or Reorganized Debtors, as applicable, and the objecting party for thirty (30) days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in this Plan, including Article VIII hereof. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in Article V.H.1 and elsewhere herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (1) identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date. The assumption or rejection of all Executory Contracts and Unexpired Leases shall be determined by the Debtors with the consent of the Required Consenting First Lien Creditors.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, and related Cure amounts with respect thereto, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases or Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications,

amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, or Schedule of Assumed Executory Contracts and Unexpired Leases, at any time up to forty-five (45) days after the Effective Date.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to this Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to this Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to this Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File a timely objection to this Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Combined Hearing (to the extent not resolved by the parties prior to the Combined Hearing).

*B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, including pursuant to this Plan or the Confirmation Order, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be treated in accordance with Article III.B of this Plan and shall be subject to the Debtors' objection and dispute in accordance with the provisions of Article VII of this Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

*C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

On or as soon as reasonably practicable after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases pay all Cure costs (if any) relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan in the ordinary course of business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed on or before fourteen (14) days

after the Filing of the Schedule of Assumed Executory Contracts and Unexpired Leases, if any. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure costs despite the failure of the relevant counterparty to File such request for payment of such Cure costs. The Reorganized Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before the Combined Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Combined Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure costs shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors and Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors shall have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

*D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy Law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

*E. Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under this Plan. Unless otherwise provided in this Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

*F. Reservation of Rights.*

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

*G. Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*H. Employee Compensation and Benefits.*

1. Compensation and Benefits Programs.

Except as otherwise set forth herein, on the Effective Date and subject to the provisions of this Plan, the Debtors shall (a) assume employment agreements or letters, severance agreements, or other agreements entered into with current and former officers and other employees or (b) to the extent agreed, enter into new agreements with such officers and other employees on terms and conditions acceptable to (i) the Debtors, (ii) such officers and other employees, and (iii) with respect to such new agreements with the Debtors' executive officers or other insiders (as defined in section 101(31) of the Bankruptcy Code), the Required Consenting First Lien Creditors, as applicable. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Subject to the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Existing Alkegen Holdco Interests in any of the Debtors;

(b) Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and

(c) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract.

The Compensation and Benefits Programs will continue, consistent with existing terms and practices, including executive compensation programs, subject to the consent of the Required Consenting First Lien Creditors.

Employees who are at the vice president level or above shall, in connection with all existing employment, incentive, change in control or equity award agreements or arrangements, waive any applicable rights or obligations pursuant to such programs, including any change of control payments, accelerated vesting in connection with a change of control, enhanced severance protections (including increased severance payments and benefits in connection with a termination of employment on or following a change of control) or any similar provision such that the Restructuring will not constitute a "Change in Control" thereunder and awards will not accelerate or become due and payable, and any such enhancements will not apply, as a result of or in connection with confirmation or consummation of the Plan; provided, however, that the foregoing shall not apply with respect to clawback or disgorgement provisions in certain retention agreements entered into between the Debtors and certain employees.

2. Workers' Compensation Programs.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation Laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance. All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy Law with respect to any such contracts, agreements, policies, programs, and plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state Law.

*I. Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A. Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the Reorganized Debtors shall make initial distributions under this Plan on account of Claims Allowed on or as soon as reasonably practicable after the Effective Date, subject to the Reorganized Debtors' right to object to Claims. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. Except as otherwise provided in this Plan, Holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the preceding paragraph, (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.C of this Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.5 of this Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

*B. Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

All Plan Distributions to any Disbursing Agent on behalf of the Holders of Claims listed on the Claims Register shall be deemed completed by the Debtors when received by such Disbursing Agent. Such Plan Distributions shall be made to any such Holders at the direction of the applicable Disbursing Agent.

C. *Rights and Powers of Disbursing Agent.*

1. Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. The Distribution Record Date shall not apply to distributions made to (or on account of) any of the Debtors' publicly traded securities, which shall be governed by the customary practices and procedures of DTC.

2. Delivery of Distributions in General.

Except as otherwise provided herein, distributions payable to Holders of Allowed Claims shall be made by the Disbursing Agent to each such Holder as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

3. Designation of Alternative Distribution Recipient.

A Holder of an Allowed Claim entitled to receive any distribution under this Plan may, at its sole election, irrevocably designate in writing one or more other Persons to receive, on such Holder's behalf, any distribution otherwise payable to such Holder under this Plan (such Holder, the "Designating Holder", and such recipient, a "Designated Recipient").

A Designating Holder must deliver to the Debtors and the Disbursing Agent a duly executed direction letter (a "Direction Letter") in form and substance reasonably acceptable to the Debtors and the Disbursing Agent, which shall (i) identify with particularity the Designating Holder, the Allowed Claim(s), and the Designated Recipient(s), (ii) provide complete payment instructions and delivery details, including any wire, check, or book-entry account information, and (iii) be received no later than six (6) Business Days prior to the Effective Date unless such deadline is extended by the Debtors or the Reorganized Debtors. The Disbursing Agent may rely conclusively upon any Direction Letter that it reasonably believes to be genuine and duly authorized without further duty of inquiry.

With respect to any distribution of New Equity Interests or other Securities under this Plan, any Designated Recipient must be eligible to receive such Securities under the Plan and applicable securities laws and must execute, deliver, or be deemed to have accepted any agreements, instruments, or organizational documents required as a condition to receipt thereof, including, without limitation, any applicable New Corporate Governance Documents and provide customary securities laws representations. No distribution of Securities shall be made to any Designated Recipient unless and until all such conditions are satisfied to the reasonable satisfaction of the Reorganized Debtors.

A Direction Letter shall become effective only upon written acknowledgment by the Disbursing Agent, may be rejected if incomplete or untimely, and, once accepted, shall be irrevocable except with the consent of the Reorganized Debtors and the Disbursing Agent. The Reorganized Debtors and the Disbursing Agent shall have no obligation to accommodate partial, conditional, or inconsistent directions.

Recognition of a Designated Recipient is an administrative accommodation only and shall not expand, diminish, or otherwise modify any rights, defenses, or obligations under this Plan, including setoff, recoupment, compliance with tax requirements, the Claims reconciliation and objection process, or the treatment and satisfaction of Claims.

Any distribution made to a Designated Recipient on behalf of a Designating Holder pursuant to a Direction Letter shall be deemed to have been made to the Designating Holder in full and final satisfaction of such Designating Holder's applicable Allowed Claim.

4. Minimum Distributions; Rounding.

No fractional shares of New Equity Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Equity Interests to be distributed to Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

5. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such Unclaimed Distribution is comprised of New Equity Interests, such New Equity Interests shall be canceled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. The Disbursing Agent shall adjust the number of shares of New Equity Interests outstanding as of the date of such cancelation to ensure that the distributions of New Equity Interests contemplated under this Plan are given full force and effect.

6. Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.G hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be canceled solely with respect to the Debtors and any non-Debtor Affiliates, and such cancelation

shall not alter the obligations or rights of any non-Debtor third parties (other than the non-Debtor Affiliates) vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

If the record Holder of any First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes is DTC or its nominee or another securities depository or custodian thereof, and such First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such Holder of the First Lien Notes, Second Lien Notes, Third Lien Notes, or Unsecured Notes shall be deemed to have surrendered such Holder's note, debenture, or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

*E. Manner of Payment.*

1. Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated by this Plan or the Plan Supplement, all distributions of the New Equity Interests to the Holders of the applicable Allowed Claims under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

2. All distributions of Cash to the Holders of the applicable Allowed Claims under this Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor.

3. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*F. Indefeasible Distributions.*

Any and all distributions made under this Plan shall be indefeasible and not subject to clawback or turnover provisions.

*G. Compliance with Tax Requirements.*

In connection with this Plan, to the extent applicable, the Debtors, Reorganized Debtors, Disbursing Agent, and any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate; *provided* that in the event the withholding or reporting agent decides to take any such action, such agent shall first notify the intended recipient in writing of such contemplated action and offer the intended recipient a reasonable opportunity to provide sufficient cash to satisfy such withholding tax in lieu of taking such action. All Holders of Claims shall, upon request, provide an IRS Form W-9 or an appropriate IRS Form W-8 to any applicable withholding or reporting agent. The Debtors and Reorganized Debtors reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

*H. Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

*I. No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, this Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims (other than to the extent any Claim is oversecured), and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

*J. Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Petition Date.

*K. Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim against the Debtors be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*L. Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers'

agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*M. Distributions on Account of First Lien Notes Claims that Are First Lien Secured Claims and Unsecured Funded Debt Claims.*

Notwithstanding any provision in the Plan to the contrary, distributions on account of First Lien Notes Claims that are First Lien Secured Claims and Unsecured Funded Debt Claims shall be, or shall be deemed to be, made by or at the direction of the First Lien Notes Trustee, Second Lien Notes Trustee, Third Lien Notes Trustee and Unsecured Notes Trustee, as applicable. Each Trustee may transfer or direct the transfer of distributions directly through the facilities of DTC and will be entitled to recognize and deal for all purposes under the Plan with Holders of First Lien Notes Claims that are First Lien Secured Claims and Unsecured Funded Debt Claims, as applicable, to the extent consistent with the customary practices of DTC. All distributions to Holders of First Lien Notes Claims that are First Lien Secured Claims and Unsecured Funded Debt Claims shall be eligible to be distributed through the facilities of DTC.

On and after the final distribution on account of (i) the First Lien Notes Claims that are First Lien Secured Claims, or (ii) Unsecured Funded Debt Claims, or notice from the Debtors or Reorganized Debtors, as applicable, that there will be no further distribution on account of the foregoing, (i) the First Lien Notes, Second Lien Notes, Third Lien Notes and Unsecured Notes, as applicable, shall thereafter be deemed to be null, void, and worthless, and (ii) at the request of the relevant Trustee, DTC shall take down the relevant position relating to the First Lien Notes, Second Lien Notes, Third Lien Notes or Unsecured Notes, as applicable, without any requirement of indemnification or security on the part of the Debtors, the Reorganized Debtors, any Trustee, or any other party.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A. Disputed Claims Process.*

Notwithstanding section 502(a) of the Bankruptcy Code and in light of the Unimpaired status of all Allowed General Unsecured Claims under this Plan, Holders of Claims need not File a Proof of Claim and except as otherwise provided in this Plan, all Allowed Claims shall be satisfied in the ordinary course of business of the Reorganized Debtors as if the Chapter 11 Cases had not been commenced except that (unless expressly waived pursuant to this Plan) the Allowed amount of such Claims shall be subject to, the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable. All Proofs of Claim Filed in the Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors. Upon the Effective Date, all Proofs of Claim Filed against the Debtors, regardless of the time of filing, and including Proofs of Claim Filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below. Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court.

For the avoidance of doubt, there is no requirement to File a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim, as applicable, under this Plan. Notwithstanding the foregoing, Entities must File Cure objections as set forth in Article V.C of this Plan to the extent such Entity disputes the amount of the Cure paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty. **Except as otherwise**

**provided herein, all Proofs of Claim Filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

*B. Allowance of Claims.*

After the Effective Date, except as otherwise expressly set forth herein, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law. General Unsecured Claims will be Allowed in the ordinary course of business pursuant to applicable non-bankruptcy law or court order, subject to counterclaims, defenses, setoff, or objections by the Debtors or Reorganized Debtors.

*C. Claims Administration Responsibilities.*

Except as otherwise specifically provided in this Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Article IV.Q of this Plan.

Notwithstanding the foregoing, the Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable non-bankruptcy Law. If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute may be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced; *provided* that, for the avoidance of doubt, the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code to the extent applicable.

*D. Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim , including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

*E. Adjustment to Claims without Objection.*

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an

application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

*F. Disallowance of Claims.*

Except as otherwise expressly set forth herein, all Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

*G. No Distributions Pending Allowance.*

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

*H. Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan. On or as soon as reasonably practicable after the next Distribution Date after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

*I. Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the Debtor(s) obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII.
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A. Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, which include this Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, guarantees of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a

termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan.

*B.* ***Release of Liens.***

**Except as otherwise provided in the Exit Facility Documents, this Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created or entered into pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates (including on behalf of any guarantee obligations) shall be fully released and discharged, and all of the right, title, and interest of any Holder (and the applicable Agents of such Holder) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable Agents/Trustees for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (or the applicable Agents/Trustees for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any Agent/Trustee for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the applicable Agents/Trustees for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Exit Facility Agent that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

*C.* ***Releases by the Debtors.*** [2]

**As of the Effective Date, except as expressly set forth herein or in the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the contributions and services of the Released Parties in facilitating the reorganization of the Debtors and implementation of the Restructuring Transactions, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Debtors, their Estates, and the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf**

---

[2] The releases set forth herein are subject to ongoing review, including as part of the investigation being conducted by the Special Committee of the boards of directors of Debtors ASP Unifrax Holdings, Inc. and Ulysses Parent, Inc.

**of any of the Debtors, their Estates, and the Reorganized Debtors (including, without limitation, claims premised on doctrines of veil piercing, alter ego liability, successor liability, substantive consolidation, or amalgamation)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, the Reorganized Debtors, and their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the business, capital structure, management, ownership, or operation of the Debtors or their Estates), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the First Lien Credit Agreement, the First Lien Notes Indenture, the Second Lien Notes Indenture, the Third Lien Notes Indenture, the Unsecured Notes Indenture, the 1L/2L/3L Intercreditor Agreement, the 1L Pari Passu Intercreditor Agreement, the Restructuring Transactions (including each transaction described in the Restructuring Transactions Memorandum), the Reorganized Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, the Reorganized Debtors, or their Affiliates, including with respect to the Equity Rights Offering, the issuance and distribution of the New Equity Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the DIP Instruments, the DIP Orders, the DIP Documents, and the Exit Facility, or the filing of the Chapter 11 Cases, the pursuit of Consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.**

**Notwithstanding anything to the contrary in this Plan, the Debtors do not, pursuant to the releases set forth above, release (i) any Cause of Action identified in the Schedule of Retained Causes of Action included in the Plan Supplement, (ii) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transactions, the Exit Facility, the Exit Facility Documents, the Plan Supplement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or (iii) other than with respect to an Intercompany Release, any intentional fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates,**

**and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

*D.* ***Releases by the Releasing Parties.***

**As of the Effective Date, except as expressly set forth herein or in the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the reorganization of the Debtors and implementation of the Restructuring Transactions, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates (including, without limitation, claims premised on doctrines of veil piercing, alter ego liability, successor liability, substantive consolidation, or amalgamation)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, the Reorganized Debtors, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates, and the Reorganized Debtors (including the business, capital structure, management, ownership, or operation of the Debtors or their Estates), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the First Lien Credit Agreement, the First Lien Notes Indenture, the Second Lien Notes Indenture, the Third Lien Notes Indenture, the Unsecured Notes Indenture, the 1L/2L/3L Intercreditor Agreement, the 1L Pari Passu Intercreditor Agreement, the Restructuring Transactions (including each transaction described in the Restructuring Transactions Memorandum), the Reorganized Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, the Reorganized Debtors, or their Affiliates, including with respect to the Equity Rights Offering, and the issuance and distribution of the New Equity Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, including, for the avoidance of doubt, the Management Agreement, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document related to the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the DIP Instruments, the DIP Orders, the DIP Documents, the Exit Facility, or the filing of the Chapter 11 Cases, the pursuit of Confirmation of this Plan, the pursuit of Consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause**

**the Effective Date.**

**Notwithstanding anything to the contrary in this Plan, the Releasing Parties do not, pursuant to the releases set forth above, release (i) any Cause of Action identified on the Schedule of Retained Causes of Action included in the Plan Supplement, or (ii) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transactions, the Exit Facility, the Exit Facility Documents, the Plan Supplement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions, or (iii) other than with respect to an Intercompany Release, any intentional fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the Confirmation of this Plan; (iii) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (iv) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for a hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

*E.* ***Exculpation.***

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur, and each Exculpated Party shall be released and exculpated from, any Claim or Cause of Action arising prior to or on the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases (including each transaction described in the Restructuring Transactions Memorandum), the negotiation and pursuit of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the DIP Instruments, the DIP Orders, the DIP Documents, and the Exit Facility, or the filing of the Chapter 11 Cases, the solicitation of votes (before and after the Petition Date) for, or Confirmation of, this Plan, the funding of this Plan, the occurrence of the Effective Date, the administration of this Plan or the property to be distributed under this Plan, the issuance of Securities under or in connection with this Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, if applicable, in connection with this Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action, in each case arising out of or related to any act or omission of an Exculpated Party that is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.**

**The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**Solely with respect to this Article VIII.E, notwithstanding anything to the contrary in this Plan, each of the 1125(e) Exculpated Parties shall not incur liability for any Claim or Cause of Action related to any act**

**or omission in connection with, relating to, or arising out of, in whole or in part, the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.**

*F.* ***Injunction***.

**Except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities or the Estates on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to this Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under this Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the Exit Facility), or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F.**

**No Person or Entity may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to, any act or omission in connection with, relating to, or arising out of a Cause of Action subject to the Debtor Release, the Third-Party Release, or the Exculpation without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable Claim against a Debtor, Reorganized Debtor, Exculpated Party, or Released Party and is not a Claim that the Debtors released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (b) obtaining from the Bankruptcy Court specific authorization for such Person or Entity to bring such Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.**

*G. Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H. Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*I. Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

*A. Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1. the Restructuring Support Agreement shall be in full force and effect with no notice of termination, breach, default, event of default or similar notice having been delivered by or to any signatory thereto;

2. this Plan shall not have been amended, modified or altered in any manner as confirmed by the Confirmation Order unless such amendment or modification is implemented in accordance with the terms set forth herein;

3. the Definitive Documents, including this Plan, shall be consistent with the Restructuring Support Agreement and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement;

4. the Bankruptcy Court shall have entered the DIP Orders, which shall be Final Orders, the DIP Documents shall be in full force and effect in accordance with their terms, the DIP Termination Date (as defined in the DIP Orders) shall not have occurred, no Event of Default (as defined in the DIP Documents) shall have occurred or be continuing, and the obligations outstanding under the DIP Credit Agreement shall not have been accelerated;

5. the Bankruptcy Court shall have entered the Confirmation Order in accordance with the terms of the Restructuring Support Agreement (and subject to, and in accordance with, the consent rights set forth therein) and such Confirmation Order is not then subject to a stay and has not been materially modified;

6. the Exit Facility Credit Agreement shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived; *provided* that to the extent any definitive documentation for the New RCF is to be executed and delivered in connection with emergence, such documentation has been executed and delivered in accordance with the terms of the Restructuring Support Agreement;

7. the Transaction Expenses set forth in Article II.F shall have been paid in full (or will be paid in full concurrently with the occurrence of the Effective Date) and all other fees, expenses and other amounts contemplated to be paid by the Debtors pursuant to the Restructuring Support Agreement, the Equity Backstop Commitment Agreement, and the DIP Documents shall have been paid in full as set forth in such agreements;

8. other than the occurrence of the Effective Date, the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated by the Restructuring Support Agreement (and subject to, and in accordance with, the consent rights set forth therein) and this Plan;

9. the New Corporate Governance Documents shall have been adopted on terms consistent with the Governance Term Sheet;

10. all governmental and third-party approvals and consents that may be necessary to implement and effectuate this Plan shall have been obtained, including under any applicable antitrust Laws, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Restructuring Transactions;

11. all fees and expenses of retained Professionals that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court; and

12. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing, or prohibiting the Consummation of the Restructuring Transactions.

*B. Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in Article IX.A may be waived by the Debtors, in whole or in part, with the consent of the Required Consenting First Lien Creditors (email being sufficient) without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

*C. Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, or any Holders of Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

*D. Substantial Consummation*

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

*A. Modification and Amendments.*

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify this Plan, with the reasonable consent of the Required Consenting First Lien Creditors, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided*, that such modifications are consistent with and implemented in accordance with the terms of the Restructuring Support Agreement. Subject to those restrictions on modifications set forth in this Plan, and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of this Plan; *provided*, that any alterations, amendments, or modifications are consistent with and implemented in accordance with the terms of the Restructuring Support Agreement.

*B. Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C. Revocation or Withdrawal of Plan.*

To the extent permitted by the Restructuring Support Agreement and subject to the consent rights therein (which are incorporated herein pursuant to Article I.H), the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain, and including the Allowance or disallowance, of all or any portion of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection (to the extent applicable) of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (to the extent applicable) or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan or the Disclosure Statement, including the Restructuring Support Agreement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in this Plan, including under Article VIII hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan or the Disclosure Statement, including the Restructuring Support Agreement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under this Plan or transactions contemplated herein;

17. consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Corporate Governance Documents, the Exit Facility Documents, and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
### MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

*B. Additional Documents.*

Subject to and in accordance with the Restructuring Support Agreement, on or before the Effective Date, (1) the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and the Restructuring Support Agreement and (2) the Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims against the Debtors receiving distributions pursuant to this Plan and all other parties-in-interest, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

*C. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Confirmation Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members or advisors to any statutory committee after the Confirmation Date.

*D. Reservation of Rights.*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*E. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity; *provided* that nothing in this Article XII.E modifies section 524(e) of the Bankruptcy Code.

*F. Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| **Debtors** | **Proposed Co-Counsel to the Debtors** |
|---|---|
| ASP Unifrax Holdings, Inc.<br>Mandalay Tower III<br>201 East John Carpenter Freeway, Suite 900<br>Irving, Texas 75062<br>Attention: William K. Piotrowski, General Counsel and Senior Vice President<br>Brian Whittman, Chief Executive Officer<br>Robert Caruso, Chief Transformation Officer<br>Email: WPiotrowski@Alkegen.com<br>BWhittman@alvarezandmarsal.com<br>RCaruso@alvarezandmarsal.com | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Steven N. Serajeddini, P.C.<br>Nicholas M. Adzima<br>Margaret Reiney<br>Email: steven.serajeddini@kirkland.com<br>nicholas.adzima@kirkland.com<br>margaret.reiney@kirkland.com<br><br>and<br><br>Gray Reed<br>1845 Woodall Rodgers Fwy<br>Suite 1300<br>Dallas, Texas 75201<br>Attention: Jason S. Brookner<br>Lydia R. Webb<br>Amber M. Carson<br>Email: jbrookner@grayreed.com<br>lwebb@grayreed.com<br>acarson@grayreed.com |

| Counsel to the Ad Hoc Group | Sponsor |
| --- | --- |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention: Damian Schaible<br>Angela M. Libby<br>Jarret Erickson<br>Email:<br>damian.schaible@davispolk.com<br>angela.libby@davispolk.com<br>jarret.erickson@davispolk.com<br><br>and<br><br>Haynes and Boone, LLP<br>2801 N. Harwood St., Suite 2300<br>Dallas, Texas 75201<br>Attention: Ian T. Peck<br>Jordan E. Chavez<br>Email: ian.peck@haynesboone.com<br>jordan.chavez@haynesboone.com | Clearlake Capital Group<br>233 Wilshire Blvd., Suite 800<br>Santa Monica, CA 90401<br>Attention: Fund Operations<br>Email: loannotices@clearlake.com<br>legal@clearlake.com |
| **Counsel to the DIP Agent** | **United States Trustee** |
| Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>Attention: Gregg Bateman<br>Email: bateman@sewkis.com | Office of The United States Trustee<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Elizabeth Ziegler Young<br>Email: elizabeth.a.young@usdoj.gov |

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests. Notwithstanding anything herein to the contrary, the Reorganized Debtors shall provide notice of any documents to all Entities whose rights are affected by any such document Filed by the Reorganized Debtors.

*G. Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall be entitled to enforce the terms of the Confirmation Order and this Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

*H. Term of Injunctions or Stays.*

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

*I. Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

*J. Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/Alkegen or the Bankruptcy Court's website at https://ecf.txnb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the Plan Supplement exhibit or document shall control, unless stated otherwise in such Plan Supplement exhibit or document or in the Confirmation Order.

*K. Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

*L. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors and the Consenting Stakeholders (as applicable) will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Consenting Stakeholders, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

*M. Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors may seek authority from the Bankruptcy Court to close all of the Chapter 11 Cases, except for the Chapter 11 Case of one Debtor Entity, and all contested matters relating to each of the Debtors, including objections to Claims, would be administered and heard in the Chapter 11 Case of such Debtor Entity. The Solicitation Agent is authorized to destroy all paper/hardcopy records related to the Restructuring Transactions two (2) years after the Effective Date has occurred.

*N. Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if

such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*O. Creditor Default.*

An act or omission by a Holder of a Claim or Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and may be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (a) designate a party to appear, sign, and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce this Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Reorganized Debtors in an amount, including interest, if applicable, to compensate the Reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of this Plan.

*P. No Group.*

The Ad Hoc Group shall not include any Holders who are not represented by the Ad Hoc Group Advisors. Such Holders did not jointly negotiate the Restructuring Support Agreement or this Plan with the Ad Hoc Group and shall not constitute part of a "group" with the Ad Hoc Group for any purpose, including under foreign law.

Dated: July 26, 2026

ASP Unifrax Holdings, Inc.
on behalf of itself and all other Debtors

*/s/ Brian Whittman*

Name: Brian Whittman
Title: Chief Executive Officer

# **Exhibit B**

**Confirmation Notice**

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
1845 Woodall Rodgers Fwy
Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
lwebb@grayreed.com
acarson@grayreed.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
Margaret Reiney (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: steven.serajeddini@kirkland.com
nicholas.adzima@kirkland.com
margaret.reiney@kirkland.com

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: anup.sathy@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ASP UNIFRAX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-80008 (SWE) |
| Debtors. | ) | (Jointly Administered) |

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Alkegen. The location of Debtor ASP Unifrax Holdings, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is Mandalay Tower III, 201 East John Carpenter Freeway, Suite 900, Irving, Texas 75062.

**NOTICE OF ENTRY OF ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) CONFIRMING THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF ASP UNIFRAX HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE THAT** on [●], 2026, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Confirmation Order") confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 22] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), and approving the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of ASP Unifrax Holdings, Inc. and Its Debtor Affiliates* [Docket No. 23] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") of the above-captioned debtors and debtors in possession (the "Debtors").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the terms of the Plan (which, for the avoidance of doubt, includes the Plan Supplement and all exhibits and documents related thereto) are binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**PLEASE TAKE FURTHER NOTICE THAT** all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** the Confirmation Order, the Plan, and copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://restructuring.ra.kroll.com/Alkegen or by calling the Debtors' restructuring information line at (888) 349-3237 (USA or Canada, toll-free) or +1 (332) 230-1843 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://www.pacer.gov.

[*Remainder of page intentionally left blank*]

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Order.

Dated: [●], 2026
Dallas, Texas

*/s/DRAFT*

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
1845 Woodall Rodgers Fwy
Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
lwebb@grayreed.com
acarson@grayreed.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
Nicholas M. Adzima (admitted *pro hac vice*)
Margaret Reiney (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: steven.serajeddini@kirkland.com
nicholas.adzima@kirkland.com
margaret.reiney@kirkland.com

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: anup.sathy@kirkland.com

*Proposed Co-Counsel for the Debtors*
*and Debtors in Possession*